UNITED STATES, Appellant

v.

Francis C. WEYMOUTH, Airman
U.S. Air Force, Appellee.

No. 94–6004.
CMR Misc. Dkt. No. 94–07.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 13, 1994.

Decided Sept. 29, 1995.

For the Accused: *Captain Richard D. Desmond* (argued); *Colonel Jay L. Cohen* and *Captain Robert E. Watson* (on brief); *Lieutenant Colonel Frank J. Spinner* and *Lieutenant Colonel Joseph L. Heimann.*

For the United States: *Captain Jane M.E. Peterson* (argued); *Colonel Jeffery T. Infelise* (on brief).

*Opinion*

COX, Judge:

1. To resolve this case, it is necessary to clarify the very definition of an offense in the military; then to show how the definition of military offenses compares and contrasts with the definition of offenses in the federal criminal justice system; and finally, to ex-plain how those differences affect the treatment of lesser-included offenses.

## I

2. This case is before us on certification from the Judge Advocate General of the Air Force. Art. 67(a)(2), Uniform Code of Military Justice, 10 USC § 867(a)(2) (1989). At the time of certification, the accused's trial stood arrested *in limine* as a result of a government interlocutory appeal under Article 62, UCMJ, 10 USC § 862 (1983). On May 12, 1995, pending finalization of this opinion, we upheld the ruling of the military judge and returned the record of trial to the Judge Advocate General of the Air Force for resubmission to the military judge for trial to proceed. 43 MJ 125.

3. The allegation is that the accused attacked the victim with a knife, wounding him seriously. For this one incident, the accused was charged with attempted murder, assault in which grievous bodily harm was intentionally inflicted, assault with a means or force likely to produce death or grievous bodily harm, and assault with intent to murder. Arts. 80, 128, and 134, UCMJ, 10 USC §§ 880, 928, and 934, respectively.

4. Before the proceedings were halted, the military judge granted the accused's motion to dismiss the three assault specifications on the ground that they were lesser-included offenses of attempted murder. The judge ruled, however—and the defense specifically agreed—that if any of the lesser offenses were raised by the evidence, it would be appropriate for the judge to instruct the members thereon. With that understanding, the assault specifications were dismissed "without prejudice."

5. Though agreeing that, in the end, the accused should stand convicted of only one of the offenses, the prosecution had argued that it was premature to dismiss the lesser offenses and that the trial should proceed to findings with the alternate charges before the factfinder. Upon losing the motion, the prosecution appealed the military judge's ruling.

6. In a divided *en banc* decision, the Court of Military Review[1] denied the government petition. 40 MJ 798 (1994). The Judge Advocate General of the Air Force then certified to us four issues for review, including whether the Court of Military Review correctly applied the elements test for determining lesser-included offenses; whether that court erred in refusing to permit alternate pleadings of lesser-included offenses; and whether that court erred in concluding that the two aggravated assaults (Art. 128(b)) were lesser-included offenses of attempted murder.[2]

7. In our order of May 12, 1995, we indicated our conclusion that the military judge did not abuse his discretion in provisionally dismissing the assault specifications, so we answered the certified questions in the negative.

## II

8. The instant case deals with a problem closely related to that treated in *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Schmuck was indicted on, and convicted of, multiple counts of mail fraud. 18 USC §§ 1341 and 1342. Before trial, he moved, under Fed.R.Crim.P. 31(c), for a jury instruction on the lesser offense of tampering with an odometer, 15 USC §§ 1984 and 1990c(a), but the judge declined to so instruct. 489 U.S. at 707–08, 109 S.Ct. at 1446. Fed.R.Crim.P. 31(c) provides:

The defendant may be *found* guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.

(Emphasis added.)

9. In construing Fed.R.Crim.P. 31(c), the Supreme Court "adopt[ed] the elements approach," which, according to the majority, means that

one offense is not "necessarily included" in another unless the elements of the lesser offense are a subset of the elements of the charged offense.

*Id.* at 716, 109 S.Ct. at 1450. Thus, *Schmuck*, in utilizing an elements test for determining lesser-included offenses, is the counterpart of the multiplicity test (*i.e.*, whether a single act may violate more than one offenses) announced long ago in *Blockburger v. United States*, 284 U.S. 299, 303–04, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (single act of selling narcotics constitutes both "the offense of selling any of the forbidden drugs except in or from the original stamped package; and ... the offense of selling any of such drugs not in pursuance of a written order of the person to whom the drug is sold"). *See also Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

10. The *Schmuck* majority noted further that Fed.R.Crim.P. 31(c)

speaks in terms of an offense that is "necessarily included in the offense charged." This language suggests that the comparison to be drawn is between *offenses*. Since offenses are statutorily defined, that comparison is appropriately conducted by

1. *See* 41 MJ 213, 229 n. * (1994).

2. The certified issues were framed as follows:

I
WHETHER THE AIR FORCE COURT OF MILITARY REVIEW FAILED TO PROPERLY APPLY THE STATUTORY ELEMENTS TEST FOR DETERMINING LESSER–INCLUDED OFFENSES AS MANDATED BY THE SUPREME COURT IN *SCHMUCK v. UNITED STATES*, MADE APPLICABLE TO THE MILITARY BY *UNITED STATES v. TETERS* AND *UNITED STATES v. FOSTER*.

II
WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRONEOUSLY REFUSED TO ALLOW ALTERNATIVE PLEAD-INGS OF LESSER–INCLUDED OFFENSES AS RECOMMENDED BY THIS COURT IN *UNITED STATES V. FOSTER*.

III
WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED IN HOLDING THAT ASSAULT WITH A DANGEROUS WEAPON IS A LESSER–INCLUDED OFFENSE OF ATTEMPTED MURDER.

IV
WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED IN HOLDING THAT ASSAULT IN WHICH GRIEVOUS BODILY HARM IS INTENTIONALLY INFLICTED IS A LESSER–INCLUDED OFFENSE OF ATTEMPTED MURDER.

reference to the statutory elements of the offenses in question, and not, as the inherent relationship approach would mandate, by reference to conduct proved at trial regardless of the statutory definitions. Furthermore, the language of Rule 31(c) speaks of the necessary *inclusion* of the lesser offense in the greater. While the elements test is true to this requirement, the inherent relationship approach dispenses with the required relationship of necessary inclusion: the inherent relationship approach permits a lesser included offense instruction even if the proof of one offense does not invariably require proof of the other as long as the two offenses serve the same legislative goals.

489 U.S. at 716–17, 109 S.Ct. at 1450–51. Thus, in federal law, "offenses are statutorily defined."

11. Under the rejected "inherent relationship" test, one offense is included in another when the *facts as alleged* in the indictment *and proved at trial* support the inference that the defendant committed the less serious crime, and an "inherent relationship" exists between the two offenses. This relationship arises when the two offenses relate to the protection of the same interests and the proof of the greater offense can *generally* be expected to require proof of the lesser offense.

*Id.* at 708–09, 109 S.Ct. at 1446–47 (emphasis added).

12. The *Schmuck* majority also concluded that the rejected approach, contrary to their view of the meaning of Fed.R.Crim.P. 31(c), placed the prosecution at great disadvantage compared to the defense, in this respect:

[I]f … the determination whether the offenses are sufficiently related to permit an instruction is delayed *until all the evidence is developed at trial*, the defendant may not have constitutionally sufficient notice to support a lesser included offense instruction requested by the prosecutor if the elements of that lesser offense are not part of the indictment. Accordingly, under the inherent relationship approach, the defendant, by in effect waiving his right to

notice, may obtain a lesser offense instruction in circumstances where the constitutional restraint of notice to the defendant would prevent the prosecutor from seeking an identical instruction. The elements test, in contrast, permits lesser offense instructions only in those cases where the indictment contains the elements of both offenses and thereby gives notice to the defendant that he may be convicted on either charge.

*Id.* at 718, 109 S.Ct. at 1451–52 (emphasis added; footnote omitted).

13. Citing "prevailing practice at the time" of the enactment of Fed.R.Crim.P. 31(c), the *Schmuck* majority quoted approvingly from *Giles v. United States,* 144 F.2d 860, 861 (1944), which in turn quoted *House v. State,* 186 Ind. 593, 595–96, 117 N.E. 647, 648 (1917), to this effect:

To be necessarily included in the greater offense the lesser must be such that it is impossible to commit the greater without first having committed the lesser.

14. Applying these precepts to the case before them, the *Schmuck* majority had no difficulty in concluding that the elements of mail fraud and those of odometer tampering were wholly separate, so the judge did not err in declining to instruct on the lesser offense. 489 U.S. at 721–22, 109 S.Ct. at 1453–54. The dissenting Justices did not address the law of lesser-included offenses, but disagreed with the majority's conclusion that Schmuck's conduct amounted to mail fraud. *Id.* at 722–25, 109 S.Ct. at 1453–55.

15. Considering the circumstances in *Schmuck,* we assume the Supreme Court would have had no difficulty in concluding that Schmuck could have been *charged* initially with both mail fraud and odometer tampering. *See Ball v. United States,* 470 U.S. 856, 862, 105 S.Ct. 1668, 1672, 84 L.Ed.2d 740 (1985) (clear that accused, a convicted felon, could be prosecuted simultaneously for illegally receiving firearm shipped in interstate commerce and illegally possessing same firearm, even though "proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon").

III

16. Article 79, UCMJ, 10 USC § 879, is the military's analogue to Fed.R.Crim.P. 31(c). That Article provides:

An accused may be *found* guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein.

(Emphasis added.) *Cf.* ¶ 8.

17. In *United States v. Teters*, 37 MJ 370, 376 (CMA 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994), following the lead of the Supreme Court in *Schmuck v. United States, Albernaz v. United States,* and *Blockburger v. United States,* all *supra,* ¶ 9, we adopted the elements test for determining whether particular crimes were multiplicious with other offenses or lesser-included therein. *See also United States v. Wheeler,* 40 MJ 242 (CMA 1994). At this point, however, military and federal practice begin to diverge.

18. The President, pursuant to Article 36(a), UCMJ, 10 USC § 836(a), provides this explanation of Article 79:

(1) *In general.* A lesser offense is included in a charged offense when the *specification contains allegations which either expressly or by fair implication put the accused on notice to be prepared to defend against it in addition to the offense specifically charged.* This requirement of notice may be met when:

(a) All of the elements of the lesser offense are included in the greater offense, and the common elements are identical (for example, larceny as a lesser included offense of robbery);

(b) All of the elements of the lesser offense are included in the greater offense, but one or more elements is *legally less serious* (for example, housebreaking as lesser included offense of burglary); or

(c) All of the elements of the lesser offense are included and necessary parts of the greater offense, but the mental element is legally less serious (for example,

wrongful appropriation as a lesser included offense of larceny).

The notice requirement may also be met, *depending on the allegations in the specification,* even though an included offense requires proof of an element not required in the offense charged. For example, assault with a dangerous weapon may be included in a robbery.

Para. 2b(1), Part IV, Manual for Courts–Martial, United States, 1984 (emphasis added).[3] *See also* para. 158, Manual for Courts–Martial, United States, 1969 (Revised edition) ("An included offense exists when a specification contains allegations, which are sufficient, either expressly or by fair implication, to put the accused on notice that he must be prepared to defend against it in addition to the offense specifically charged."); *cf.* § 1.07(4), ALI Model Penal Code, *reprinted in* ALI *Model Penal Code and Commentaries* (Part I) 101–02 (1985).

■ 19. Thus, in the military, the *specification,* in combination with the statute, provides notice of the essential elements of the offense. Para. 2, Part IV, 1984 Manual, *supra.* This should not be surprising for the specification is intended to be a plain, concise, and definite statement of the essential facts constituting the offense charged. RCM 307(c)(3), 1984 Manual, *supra.* Its function is to be sufficiently specific to inform the accused of the conduct charged, to enable the accused to prepare a defense, and to protect the accused against double jeopardy. RCM 307(c)(3), Discussion to para. (G)(iii).

■ 20. Indeed, historically, the specification has never been conceived of as something severable from the Charge. Thus, Manual for Courts–Martial, United States, 1951, states:

The formal written accusation in court-martial practice consists of two parts, the technical charge and the specification. For offenses in violation of the code, the

---

3. We will use the paragraph number contained in Executive Order 12473, 49 Fed.Reg. 17295 (1984), and the original version of the Manual for Courts–Martial, United States, 1984, not that in the 1994 edition.

charge merely indicates the article the accused is alleged to have violated, while the specification sets forth the specific facts and circumstances relied upon as constituting the violation. Each specification, together with the charge under which it is placed, constitutes a separate accusation. The term "charges" or "charges and specifications," is applied to the formal written accusation or accusations against the accused.

Para. 24*a* ("**Definitions**"). In other words, for at least the first 44 years under the Uniform Code of Military Justice, the definition of offenses has included both those elements denoted in the statutes and those necessarily alleged in the specifications.

21. Military practice in this respect does not, however, equate to the disfavored "inherent relationship" test. According to the Supreme Court, that test involved at least two factors not present in the military. One was that the proof actually adduced at trial apparently could be used to evaluate relationships between offenses. The other was that there needed to be some sort of a determination that the relationship between particular offenses was "inherent." These aspects are absent from traditional military law.

22. Under federal law after *Schmuck*, it is apparently possible to conclude, *e.g.*, that assault with a dangerous weapon is *never* a lesser-included offense of voluntary manslaughter, even though the indictment for manslaughter alleges use of the dangerous weapon. This is because

> [t]he use of a dangerous weapon, although frequently associated with a killing, is not an element of voluntary manslaughter.

*United States v. Browner*, 937 F.2d 165, 168 (5th Cir.1991). Since it is possible to commit voluntary manslaughter without use of a dangerous weapon, the latter offense is not included by the statutory elements in the former. *Id.* at 169.

23. In the military, in contrast, it would appear that the due process-notice function of the specification would ordinarily require an allegation, if known, of use of the dangerous weapon in the course of committing voluntary manslaughter. This allegation, then, would be sufficient to put the parties, counsel, and judge on notice of a charge of assault with a dangerous weapon arising out of a properly pleaded voluntary manslaughter. It would also permit the Government to fall back on the assault charge under certain circumstances (*e.g.*, failure of proof of causation of death). Para. 2, Part IV, 1984 Manual, supra.[4]

24. We hasten to point out that, in so construing these Codal and Manual provisions, we do not retreat to the "fairly embraced" concept of *United States v. Baker*, 14 MJ 361 (CMA 1983), which we discarded in *United States v. Teters, supra.* ¶ 17. That approach exemplified the Supreme Court's concern in *Schmuck* that the rules operate equally for the prosecution and the defense, because the "fairly embraced" conclusion gave the appearance of only working for the defense in having specifications dismissed. *Compare United States v. Hollimon*, 16 MJ 164, 167 (CMA 1983) (communication of threat "shown by the pleadings and evidence to be fairly embraced as an integral means" of accomplishing rape; threat specification set aside), *and United States v. Valenzuela*, 16 MJ 305–06 (CMA 1983) (assault with dangerous weapon multiplicious for findings with rape; assault specification set aside), *with United States v. Smith*, 14 MJ 68, 71 (CMA 1982) (where claim of right to property improvidenced appellant's plea of guilty to robbery, aggravated assault through use of knife not implicit within robbery charge; only simple assault fairly included). Indeed, we are aware of no reported case of the Government's ever being permitted to "fall back" upon an "embraced" offense unless all of the elements of that "embraced" offense were explicitly or by fair implication present within in the "embracing" offense. *Cf. United States v. Zupancic*, 18 MJ 387 (CMA 1984),

---

4. There is no room for prosecutorial "cuteness" in deliberately omitting allegations of critical facts in specifications. First, the Commander-in–Chief clearly requires such allegations. Second, there are abundant remedies for specifications that fail to provide the accused with adequate notice of the offense and protection from double jeopardy.

and at 391–95 (Cook, J., concurring in part and dissenting in part).

25. Under the pleadings-elements approach, however, the results are the same for the prosecution and the defense. Either the elements alleged in the greater offense (by the statute and the pleadings) fairly include *all* of the elements of the lesser offense or they do not. *As alleged,* proof of the greater offense must invariably prove the lesser offense; otherwise, the lesser offense is not included. Thus, assuming all other elements of assault with a dangerous weapon, *e.g.,* are explicitly or by fair implication included within elements of voluntary manslaughter, an allegation of voluntary manslaughter by stabbing the victim with a knife would presumably give either party a right to an instruction on the lesser offense of assault with a dangerous weapon—if warranted by the evidence adduced at trial. Similarly, an appellate court could set aside such a conviction of voluntary manslaughter and substitute a conviction of aggravated assault upon the application of either party or on its own motion.

26. These practices are not new in the military. Paragraph 28*a,* 1951 Manual, *supra,* counseled that

[t]he specification should include the following:

\* \* \*

(3) A statement in simple and concise language of the facts constituting the offense. The facts so stated will include all the elements of the offense sought to be charged.

27. Further, the 1951 Manual, *supra,* included "[a] table listing some *commonly* included offenses...." Para. 74*b* (3) (emphasis added). Within that table, for example, "aggravated assault" is listed as "commonly included" within voluntary manslaughter. Appendix 12, 1951 Manual, *supra* at 539. Similarly, a great many other offenses were hierarchically linked therein—offenses that are neither "necessarily" nor "invariably" included one within the other by reference to statutory elements alone. Obviously, whether a particular aggravated assault was "necessarily" included within a particular volun-

tary manslaughter would depend on the facts of the case as reflected in the pleadings.

28. Thus, from the outset of the operation of the Uniform Code, the President has evinced the policy that, for servicemembers, offenses hierarchical *in fact* should be charged and treated as hierarchical *in law*—or in other words,

what is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person.

Para. 26*b,* 1951 Manual, *supra.* As indicated by the Manual for Courts–Martial, that policy continues in an unbroken line to this day. *See* 1969 Manual, *supra* at A12–4; para. 44*d,* Part IV, 1984 Manual, *supra;* and RCM 307(c)(4), Discussion, 1984 Manual, *supra.*

29. Historical differences between federal and military law in this regard should not be surprising. For one thing, unlike federal offenses, military offenses are not exclusively the product of statutes. Countless military offenses derive their elemental essence from regulations or orders, from customs of the service, or from traditional military crimes that have emerged from a military common law-like process. Arts. 90(2), 91(2), 92, 133, and 134, UCMJ, 10 USC §§ 890(2), 891(2), 892, 933, and 934, respectively. *See Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Mere recitation of statutory elements would provide servicemembers no notice whatever in such cases. A specification, for example, alleging merely the statutory elements of assault with intent to murder would include only "(1) [t]hat the accused did or failed to do certain acts; and (2)[t]hat, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces." Para. 60b, Part IV, 1984 Manual, *supra; see* Art. 134. Such an allegation would fail utterly to provide an accused the requisite due process notice and protection against double jeopardy.

30. Another relevant distinction between federal and military law is the military's general policy of bundling all known charges into a single trial. RCM 307(c)(4). Federal law,

in contrast, is quite restrictive in this regard. Fed.R.Crim.P. 8(a). *See* Drafters' Analysis of RCM 307(c)(4), 1984 Manual, *supra* at A21–22 (1994 ed.), rejecting Fed.R.Crim.P. 8(a) as "too unwieldy for a military criminal system, particularly in combat or deployment." Possibly the President recognized that a policy encouraging the proliferation of charges arising out of a single act would exacerbate other ever-present risks of charge bundling. *See United States v. Hogan,* 20 MJ 71, 73 (CMA 1985) ("evidence of the second rape 'spilled-over' to the first one"); *United States v. Sturdivant,* 9 MJ 923, 927 (ACMR 1980) ("appellant's effort to buy his monthly measure of marijuana" was "multiplied" into 10 specifications, resulting in convictions of 7, several of which not sufficiently supported by evidence), *charges dismissed,* 13 MJ 323, 330 (CMA 1982).

■ 31. Yet another significant distinction between federal and military law involves the consequences of a conclusion that offenses are not lesser included or multiplicious. In courts-martial, separate for findings equals separate for sentencing, *see United States v. Morrison,* 41 MJ 482 (1995), and the maximum punishment is calculated by totaling the maximum punishment of each specification deemed separate. RCM 1003(c)(1)(C). The prosecutorial incentive to slice a single event into as many components as possible is thus maximized.

32. In federal sentencing practice, in contrast, offenses are grouped by closely related counts. United States Sentencing Commission, *Guidelines Manual* §§ 3D1.1–3D1.5 (Nov.94). The result generally is that dividing up an incident adds nothing to the maximum potential sentence. Even before the sentencing guidelines were in effect, federal judges had the discretion to adjudge concurrent sentences. In the military, however, the "unitary" sentence precludes concurrent sentencing. RCM 1003(c)(1)(C). Thus in the federal courts, elemental literalism adds little, if anything, to the ultimate punishment. In the military, but for the President's reality-based modifications, elemental literalism

would greatly skew the sentencing equation from the federal analogue.

33. Still another difference between federal and military practice may be noted. Unlike the President's formulation most recently articulated in paragraph 2, Part IV, 1984 Manual, *supra* (*see also* § 1.07(4), ALI Model Penal Code, *reprinted in* ALI *Model Penal Code and Commentaries* (Part I) 101–02 (1985)), it appears there may be no federal corollary for the military concept of "legally less serious" elements. Therefore, it is possible in federal practice to conclude that

the element of serious bodily injury is not a part of the elements of murder.

*United States v. Cavanaugh,* 948 F.2d 405, 410 (8th Cir.1991) (assault resulting in serious bodily injury not a lesser-included offense of murder).

34. Under military law, it would be unthinkable to conclude that serious (grievous) bodily harm is not an injury "legally less serious" than death. *Compare* para. 54b(4)(b)(ii) *with* 43b(2)(a), Part IV, 1984 Manual, *supra.* It was based on paragraph 2b(1), Part IV, 1984 Manual, *supra,* that we concluded in *United States v. Foster,* 40 MJ 140, 144–46 (CMA 1994), that the actus reus of indecent acts was a "less serious sexual act" than that of indecent assault and, similarly, that the actus reus of indecent assault was a "less serious sexual act" than that of sodomy. *See also United States v. Schoolfield,* 40 MJ 132, 137 (CMA 1994) ("[i]ndecent acts requires a sexually related act not necessarily rising to the level of sexual intercourse.... [E]lements of the indecent-acts offense are a subset of the elements of rape.")

35. Of course, there is a still more fundamental difference between *Schmuck/Blockburger* and the instant case: here we do not have a *findings* issue, but a *charging* issue. The question is how many specifications may be published to the court members during the pendency of trial on the merits? In federal practice, there may be no prohibition against trying multiplicious counts or both greater and lesser-included offenses. *See Ball v. United States, supra.* ¶ 15.

36. Military policy, however, is the reverse, presumably for reasons such as those previously indicated. *See* RCM 307(c)(4), Discussion ("In no case should both an offense and a lesser-included offense thereof be separately charged."); *see also* para. 26*b*, 1951 Manual, *supra; United States v. Middleton,* 12 USCMA 54, 58, 30 CMR 54, 58 (1960) (law officer, now military judge, must not permit "exaggeration of a single offense into many seemingly separate crimes" which "may ... create the impression that the accused is a 'bad character' and thereby lead the court-martial to resolve ... doubt created by the evidence" against him); *United States v. Sturdivant,* 13 MJ at 330.

IV

■ 37. Turning to the instant case, we have previously held that the military judge did not abuse his discretion in ordering the case to go forward on the attempted murder charge alone. ¶ 7. Our ruling was predicated, primarily, on the fact that the parties understood and the accused agreed that the various assault charges were lesser-included offenses. However, we likewise believe that the military judge would not have abused his discretion if he had allowed the Government to proceed on two charges—the attempted murder under Article 80, and the aggravated assault in which grievous bodily harm was intentionally inflicted under Article 128.

38. Looking first at the pleadings, we see the following regarding the charge of attempted murder:

[Appellant] did, at Pope Air Force Base, North Carolina, on or about 12 March 1994, attempt to murder Airman First Class Michael D. Streb, by means of stabbing him in the abdomen with a knife.

39. The assault in which grievous bodily harm was intentionally inflicted reads as follows:

[Appellant] did, at Pope Air Force Base, North Carolina, on or about 12 March 1994, commit an assault upon Airman First Class Michael D. Streb by stabbing him in the abdomen with a knife and did thereby intentionally inflict grievous bodily harm upon him, to wit: a deep cut.

40. Utilizing our analytical model, one can see that it is not *necessary* to prove the element of "grievous bodily harm" to prove the attempted murder; therefore, this particular type of assault is not necessarily included in the attempted-murder charge as alleged.[5]

41. Every offense must be looked at as having two parts, the *actus reus* and the *mens rea.* The *actus reus* of each of the offenses in this case is the act of stabbing the victim in the abdomen with a knife.

42. On the other hand, the *mens rea* is not so clear. First, the accused could have intended to kill the victim. Second, he could have intended only to inflict grievous bodily injury. Third, he could have intended only to stab him in the abdomen with wanton disregard for the consequences of his felonious attack, neither caring nor knowing whether the victim lived or died. Last, the accused may have intended only to frighten the victim with the knife, not intending to injure him at all.

43. In the first three instances, if the victim dies, the result would be murder regardless of the accused's *mens rea.* Article 118(2), UCMJ, 10 USC § 918(2), makes no distinction between the intention to kill and the intention to inflict grievous bodily injury resulting in death.

44. If the victim does not die, however, then the *mens rea* component becomes critical. In that case, the accused either intended to kill the victim (attempted murder) or the accused attempted only to injure him (aggravated assault). If the accused did not intend to seriously injure the victim, then other varieties of assault come into play. *See* Art. 128.

45. In the third instance, however, the accused has no specific intent other than the malicious stabbing of the victim without regard to the consequences. In this instance,

**5.** We need not decide here if the Government could create a lesser offense merely be alleging extra, non-essential elements.

the Government may prove attempted murder by alleging and proving the *mens rea* which flows from an intentional infliction of an injury likely to cause death. That may well have been the proof that the Government intended to rely upon to prove the attempted murder in this case. However, as noted above, that was not how the case was pleaded. This general intent would also suffice to prove the lesser offense of assault by the intentional infliction of grievous bodily harm under Article 128.

46. Because of these alternative possibilities under the facts of a given case, we see no abuse of discretion or a violation of the Rules for Courts–Martial if the Government alleges alternative charges based upon the exigencies of proof, realizing, however, that the accused could only be found guilty of one. Suffice it to say, under the circumstances, there was no abuse of discretion here. *See infra.*

### V

One other matter requires our comment.

### Attempted Murder and Assault with Intent to Murder

47. The difference between these two offenses approaches the metaphysical. *Compare* paras. 4b and 43b(2) *with* para. 64b, Part IV, 1984 Manual, *supra.* Professor Perkins epitomizes the two traditional offenses thusly:

> Since an attempt to commit a battery is an assault, and since every murder includes a battery, logic suggests that every attempted murder includes an attempted battery and hence an assault. If this were true an attempt to commit murder and an assault with intent to commit murder would be merely different ways of expressing the same result. Logical as this may seem, however, it fails to give a true picture of the common law because of peculiarities in

the history of its development. The law of assault, crystallizing at a much earlier day than the law of criminal attempt in general, is much more literal in its requirement of "dangerous proximity to success" (actual or apparent) than is the law in regard to an attempt to commit an offense other than battery.

> Apart from this, the two are almost identical.... ·

R. Perkins, *Criminal Law* 643 (3d ed. 1982) (footnotes omitted).

48. This same historical anomaly—the crystallization of the law of assaults prior to that of the law of attempts—apparently explains why attempts to commit battery often retain the denomination "assault" rather than attempted battery, and why so much ink has been spilled over the years in trying to decide whether there could be such a thing as an "attempted assault." [6]

49. In the instant case, it is unnecessary to apply elements analysis in deciding whether Congress wanted assault with intent to murder to be multiplicious with, or lesser-included of, attempted murder. That is because Congress, though specifically invited, declined to create an offense of assault with intent to murder.

50. The Morgan committee proposed the following language for the offense of assault (Article 128):

> (a) Any person subject to this code who attempts or offers with unlawful force or violence to do bodily harm to another person, whether or not the attempt or offer is consummated, is guilty of assault and shall be punished as a court-martial may direct.

> (b) Any person subject to this code who—

>> (1) commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm; or

---

6. According to Clark and Marshall:

> Since a simple assault is nothing more than an attempt to commit a battery, and aggravated assaults are nothing more than attempts to commit murder, rape, or robbery, an attempt to commit an assault, whether simple or aggravated is not a crime.

*A Treatise on the Law of Crimes* § 4.07 at 246 (7th ed. 1967). Attempted assault would merely denote "an 'attempt to attempt' a crime." *Id. See also* R. Perkins, *Criminal Law* 168–71 (3d ed. 1982).

(2) commits an assault and intentionally inflicts grievous bodily harm with or without a weapon;

is guilty of aggravated assault and shall be punished as a court-martial may direct.

Hearings on H.R. 2498 Before a Subcom. of the House Armed Services Comm., 81st Cong., 1st Sess. 1233 (1949).

51. Referencing Article of War 93, *inter alia,* the Morgan committee noted that proposed Article 128

differs from present service practice in that assaults with intent to commit specific crimes *have been eliminated.* Such assaults could be punished under article 80 (attempts), or, if the intent is doubtful, under this article.

*Id.* at 1234 (emphasis added).

52. On the other hand, Major General Thomas H. Green, The Judge Advocate General of the Army, disagreed. He proposed the following as an offense under the Uniform Code:

Article 125. Assault.

\* \* \*

(c) Any person subject to this code who commits an assault with intent to commit any felony is guilty of felonious assault and shall be punished as a court-martial may direct.

Hearings on S. 857 and H.R. 4080 Before a Subcomm. of the Senate Armed Services Comm., 81st Cong., 1st Sess. 277 (1949).

53. General Green noted in his commentary that his "proposed amendment adds felonious assaults (assaults with intent to commit any felony). Such assaults are denounced in title 18, United States Code, section 113(a) and (b). The Morgan report states that such assaults were intentionally omitted from the code because they were actually attempts. This is thought not to be the law, for a person can assault another

(for example, a watchman) with intent to commit a felony (for example, a housebreaking) without having gone far enough with respect to the intended felony to constitute an attempt to commit it." Senate Hearings, *supra* at 277.

54. Professor Morgan, *et al.,* prevailed with Congress: Article 128 was taken verbatim from their proposal, and there is no other provision in the Code for "felonious assault." [7] General Green, however, appears to have prevailed with the President, for the initial Manual for Courts–Martial catalogs assaults "with intent to murder," "to commit voluntary manslaughter," "to commit rape," "to rob," and "to commit sodomy" as offenses under the general article (Art. 134). Para. 213*d* (1), 1951 Manual, *supra.* [8] *See* para. 64, Part IV, 1984 Manual, *supra.*

55. In a discussion section to paragraph 213*d* (1), the 1951 Manual, *supra,* provides the following statement, paralleling the commentary accompanying General Green's legislative proposal:

An assault with intent to commit an offense is not necessarily the equivalent of an attempt to commit the intended offense, for an assault can be committed in furtherance of an intended act without thereby achieving that degree of proximity to consummation of the act which is essential to an attempt to commit that act.

(Citation omitted.)

56. Whatever may have been the law at that time, the 1951 Manual statement and General Green's commentary are clearly not the law today. An assault perpetrated in the course of attempting to commit some other offense would plainly be sufficient to constitute an act "amount[ing] to more than mere preparation and apparently tend[ing] to effect the commission of the intended offense." Para. 159, 1951 Manual, *supra;* para. 4b, Part IV, 1984 Manual, *supra; see United States v. Schoof,* 37 MJ 96 (CMA 1993).

---

**7.** The only modification in Article 128, Uniform Code of Military Justice, 10 USC § 928, from its initial enactment has been substitution of the word "chapter" for the word "code" in both places that it occurred. Act of Aug. 10, 1956, ch. 1041, 70A Stat. 75.

**8.** While the President enjoys broad powers in the areas of procedure and sentencing, Arts. 36 and 56, UCMJ, 10 USC §§ 836 and 856, respectively, he has no such power in the area of declaring substantive crimes. *See United States v. Hemingway,* 36 MJ 349, 351 (CMA 1993).

57. It is not before us to decide whether assault with intent to murder, *inter alia*, can ever be a proper offense under the Uniform Code, *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), *i.e.*, whether it was preempted by Congress through enactment of Articles 80 and 118. *See* para. 60c(5), Part IV, 1984 Manual, *supra*. For purposes of this appeal, we hold only that, based on the plain meaning of the statutes and the legislative history, Congress authorized an offense of attempted murder and, at a minimum, did not expect service-members to be charged with *both* attempted murder and assault with intent to murder, arising out of the same act. Therefore, the military judge was correct in dismissing that assault specification. To the extent the Court of Military Review may have erred with respect to these two offenses, it was in applying an elements test at all.

## VI

58. The final offense pairing in issue is "assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm" (*see* para. 54b(4), Part IV, 1984 Manual, *supra*) and attempted intentional murder (¶ 47). All of the members of the Court of Military Review agreed that this type of assault was necessarily and completely included within attempted murder. We agree. Even a cursory comparison of the elements confirms this conclusion. The military judge did not err in dismissing this species of aggravated assault as lesser included in the attempt, and the court below did not err in sustaining the judge's ruling.

## VII

59. To summarize our holdings on the law of lesser-included offenses and multiplicity: in *United States v. Teters, supra,* we adopted the elements test of *Schmuck v. United States* and *Blockburger v. United States,* both *supra,* ¶¶ 8 and 9; in *United States v. Foster, supra,* ¶ 34, we clarified that elements in the lesser offense that are "legally less serious" than elements of the greater offense are included elements; today we clarify that, in the military, those elements required to be alleged in the specification, along with the statutory elements, constitute the elements of the offense for the purpose of the elements test.

## VIII

60. Regarding specifically the military judge's dismissal of assault in which grievous bodily harm is intentionally inflicted, even though we hold that that offense is not technically included within attempted murder, we do not believe the Government was prejudiced, and we do not disagree with the judge's action. As we understand it, the Government stood, at the point it took its appeal, in *exactly* the same position legally as it did when the proceedings commenced. That is to say, the Government remained free to adduce evidence on all of the charges and specifications initially alleged (as well as any other included offenses), and the military judge was obliged to instruct on each offense reasonably raised by the evidence, subject to the proviso that findings of guilty could be returned ultimately on only one of the specifications. The defense, for its part, was utterly estopped from denying that the three provisionally dismissed specifications were lesser-included offenses, and it could not possibly argue that it was not on notice of the possible lesser offenses. Under the circumstances, there is no possibility that the Government was prejudiced by the military judge's ruling.

61. Furthermore, provisional dismissal of lesser offenses in conjunction with express defense stipulations such as that here, particularly where the Government concedes that conviction of multiple offenses is inappropriate, may well, in certain cases, avoid subsequent issues of spill-over or misleading the factfinder by making the accused appear as a "bad character." *See United States v. Hogan; United States v. Sturdivant; United States v. Middleton,* all *supra.* ¶¶ 30 and 36. The theoretical basis of the military judge's ruling herein is not entirely clear, and it is quite possible that it was based at least in part upon his desire to avoid these problems. To the extent that it may have been, under

the circumstances present here, he did not abuse his discretion.

With respect to the certified questions, we adhere to our prior holding that the military judge, and hence the Court of Military Review, did not err.

The decision of the United States Air Force Court of Military Review denying the government appeal is affirmed.

Judge GIERKE concurs.

WISS, Judge (concurring in part):

62. I concur in Parts I—III and VII of the lead opinion because I agree on the basis of the analysis there that, due to idiosyncrasies in the military justice system, application of the "elements" test of lesser-included offenses requires consideration of "those elements required to be alleged in the specification, along with the statutory elements...." ¶ 59. *See generally* Art. 79, Uniform Code of Military Justice, 10 USC § 879. Acknowledging the important distinctions between our practice and procedure and that found in most civilian jurisdictions including Federal district courts, I agree that this approach most sensitively implements an appellate court's fundamental mission in this area of the law: to ascertain and implement the intent of Congress as to whether an accused's conduct can provide the basis of two or more convictions and punishments. *See United States v. Albrecht*, 43 MJ 65 (1995).

63. In this case, however, there is no need to wrestle with application of this concept to the offenses here in issue. As the lead opinion points out, the prosecution squarely asserted that, once the dust settled, it wanted only one conviction; and the military judge assured the prosecution that he would instruct on any or all of the dismissed offenses, as lesser-included offenses, if they were reasonably raised by the evidence. And for his part, the accused clearly was put on notice by all this regarding what potential offenses against which he might have to defend. In this context, there is no issue ripe

for government appeal under Article 62, UCMJ, 10 USC § 862.

SULLIVAN, Chief Judge (concurring in the result):

64. I have previously stated my view as to the resolution of this government appeal in a separate opinion attached to our prior order in this case. The majority's attempt to further use this unadjudicated case as a vehicle to simplify the law of multiplicity is self-defeating on its face.

65. Nevertheless, Judge Cox's effort to rewrite the law of multiplicity in *dicta* deserves some response. I continue to adhere to a "statutory elements" approach vis-a-vis a "pleadings elements" approach when determining necessarily included offenses at courts-martial. *United States v. Schoolfield*, 40 MJ 132 (CMA 1994); *United States v. Teters*, 37 MJ 370 (CMA 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994); *see United States v. Foster*, 40 MJ 140, 148 (CMA 1994) (Sullivan, C.J., concurring); *see also United States v. Abeyta*, 27 F.3d 470, 474 n. 7 (10th Cir.1994); *United States v. Allen*, 13 F.3d 105, 109 n. 4 (4th Cir.1993); *see generally United States v. Wolfswinkel*, 44 F.3d 782, 785 (9th Cir.1995). I also conclude that paragraph 2, Part IV, Manual for Courts–Martial, United States, 1984,* is consistent with a strict statutory elements approach or, if inconsistent, is not determinative of the law of necessarily included offenses at courts-martial. *See* Art. 79, Uniform Code of Military Justice, 10 USC § 879.

66. Finally, Judge Cox's resurrection of *United States v. Baker*, 14 MJ 361 (CMA 1983), is curious and, perhaps, an interesting exercise in semantics. In *United States v. Teters, supra* at 378, he stated, "With apologies to the great bard, I join the Court in burying *United States v. Baker*, 14 MJ 361 (CMA 1983), and its progeny, but not in praising or justifying them." Today, he digs up *Baker* and unsuccessfully attempts CPR (cardiopulmonary resuscitation).

---

*\* See* ¶ 18 n. 3.

CRAWFORD, Judge (concurring in the result):

67. The question of what constitutes a lesser-included offense under Article 79, Uniform Code of Military Justice, 10 USC § 879, is a Hydra. Article 79 provides, "An accused may be found guilty of an offense necessarily included in the offense charged. . . ." Resolution of this question involves issues of double jeopardy, double punishment, *sua sponte* instructions, duplicity, and multiplicity.

68. I agree with the majority that in determining what is a lesser-included offense under Article 79, one must examine "the specification, in combination with the statute [which] provides notice of the essential elements of the offense." ¶ 19. *See also* ¶¶ 20, 23, 25. In essence, the majority holds that what is a lesser-included offense (LIO) is based on the specification, statutory elements, and maybe those elements "fairly embraced" in the charged offense. *Schmuck v. United States*, 489 U.S. 705, 719, 109 S.Ct. 1443, 1452, 103 L.Ed.2d 734 (1989) (LIOs include those "necessarily included" in the indictment); *United States v. King*, 10 USC-MA 465, 470, 28 CMR 31, 36 (1959) ("force and violence" includes grievous bodily harm). It was this analysis, which cites prior lesser-included-offense cases, that was employed in drafting the table that appears in Appendix 12, Manual for Courts–Martial, United States, 1969 (Revised edition). Analysis of Contents, 1969 Manual, *supra* at A12–2 (Dept. of the Army Pamphlet 27–2, July 1970). These cases are important because they establish that the question of what is a lesser-included offense is grounded in common law. *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

69. This table was divided and now appears in subparagraph d, Part IV, Manual for Courts–Martial, United States, 1984, and serves as a bright-line rule for determining lesser-included offenses. While this bright-line rule will not work in every case, it will apply in the great majority of cases, eliminate uncertainty, and avoid needless appellate review. For instance, in this case, the Manual lists as the lesser-included offenses under Article 128, UCMJ, 10 USC ¶ 928, assault in which intentional grievous bodily harm was inflicted—aggravated assault with a dangerous weapon, assault and battery, and assault. Para. 54d(7), Part IV, 1984 Manual, *supra*.

70. Since the term "grievous" was not alleged in the specification and a stabbing in the abdomen may be superficial, the judge did not find that the intent to inflict grievous bodily harm was subsumed in the intent to murder. I would hold that it is. *Cf. United States v. Ricketts*, 1 MJ 78 (CMA 1975).

71. In any event, based on the language in the majority opinion, in the future the prosecution will have to allege "grievous" in the specification. If the defense objects based on duplicity, then the Government would be entitled to have two specifications.