CRAWFORD, Chief Judge
(dissenting):
The late Judge Cook once said: “The problem is not that there are insufficient tests for multiplicity; the problem is that there are so many.” United States v. Baker, 14 MJ 361, 372 (CMA 1983)(Cook, J., dissenting). Today, our Court perpetuates the turmoil in the military justice system by sanctioning yet another subjective test, one that smacks of equity, as a way to solve the multiplicity conundrum. I would answer the first certified question in the affirmative. The Court of Criminal Appeals did err by holding that a “doctrine” of unreasonable multiplication of charges can exist separately from the concept of multiplicity set forth in the Constitution, the Uniform Code of Military Justice, and the Manual for Courts-Martial. See, e.g., United States v. Scheffer, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (President’s rules are binding unless they violate the Constitution or Code).
The Double Jeopardy Clause of the Fifth Amendment and its codification in Article 44, UCMJ, 10 USC § 844, together with the *340 Sixth Amendment right to a fair trial, prohibit multiple trials and multiple sentences for the “same” offense. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Likewise, these constitutional provisions prohibit consecutive sentencing for the same offense. Id.
Both the 1917 and 1921 Manuals stated that the “duplication of charges for the same act or omission will be avoided except when, by reason of lack of definite information as to available evidence, it may be necessary to charge the same act or omission as constituting two or more distinct offenses.” Para. 66, Manual for Courts-Martial, U.S. Army, 1917 and 1921. The 1949 Manual stated: “One transaction, or what is substantially one transaction, should not be made the basis for an unreasonable multiplication of charges against one person.” Para. 27, Manual for Courts-Martial, U.S. Army, 1949.[1] That Manual gave as examples charging a soldier with disorderly conduct and assault, or failure to repair from a routine scheduled duty and absent without leave for the same period of time. That Manual also recognized that exigency of proof may require charging “two or more offenses.” Id. Both the 1917 and 1921 Manuals indicated that where the individual is found guilty of both offenses, the soldier should only be punished with reference “to the act or omission in its most important aspect, and if this rule be not observed by the court the reviewing authority should take the necessary action.” Para. 66, 1917 and 1921 Manuals, supra.
The 1984 and successor Manuals placed this rule in the non-binding Discussion of RCM 307(c)(4). See Manual for Courts-Martial, United States (2000 ed.). When balancing this proscription with the prescription that we try all known offenses at a single trial, RCM 601(e)(2), we examine the various charges to ensure they are aimed at separate criminal acts and do not exaggerate an accused servicemember’s exposure to punishment. RCM 1003(c)(1)(C) also prohibits multiple punishment for the same offense.
Courts of Criminal Appeals, with their statutory mandate to decide which findings and sentence must be approved, have both the duty and the authority to address the reasonableness of prosecutorial discretion. See Art. 66(c), UCMJ, 10 USC § 866(c). However, a Court of Criminal Appeals is a court of law, not a court of equity, and it must test prosecutorial discretion under the traditional legal standard of reasonableness. 55 MJ at 337-38. While both this Court and the lower courts have the power to fashion what some would consider equitable remedies, neither court is operating other than as a court of law. See, e.g., United States v. Hardcastle, 53 MJ 299 (2000); United States v. Williams, 53 MJ 293 (2000); Woodrick v. Divich, 24 MJ 147 (CMA 1987); see also United States v. Britton, 47 MJ 195, 202 (1997)(Effron, J., concurring)(referring to an equitable combination of offenses for sentencing, instead of multiplicious for sentencing).
Prosecutors have broad discretion when deciding whether to bring charges against an individual and choosing what particular charges to bring. See Standard 3-3.9, Discretion in the Charging Decision, ABA Standards for Criminal Justice, Prosecution Function and Defense Function (3rd ed.1993). This is particularly true in a military justice system which encourages the charging of all known offenses at one court-martial. A court of law, in reviewing the prosecutor’s charging decision, can review that decision, for vindictive prosecution, impermissible discrimination against the class of defendants, or to determine if there has been malicious and discriminatory prosecution in multiplying the number of charges brought. See United States v. Batchelder, 442 U.S. 114, 123-24, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). In so doing, appellate courts are not applying some type of equitable remedy or substituting an individual judge’s views for that of the prosecutor. Just as individual appellate judges are not supposed to substitute their personal judg *341 ments as to the appropriateness of a sentence, judges need not fashion remedies in equity when a legal standard exists by which to measure discretion.
If charges are not multiplicious because the prosecutor has not abused his discretion in the charging process, thereby not unreasonably increasing an accused’s punitive exposure, the lower court must then determine multiplicity using one of the three approaches set forth in United States v. Neb-lock, 45 MJ 191, 202 (1996)(Crawford, J., concurring in the result).[2]
This Court has taken numerous steps to decipher the multiplicity rules based on the Constitution, the Code, and the Manual. To assist the bench and bar, I recommend the adoption of Judge Effron’s approach in Button, 47 MJ at 202-03, or adoption of the pleadings-elements approach as applied by Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). See also Texas v. Cobb, 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001); Carter v. United States, 530 U.S. 255, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000); Drafters’ Analysis of RCM 1003(e)(1)(C), 2000 Manual, supra at A21-71. The first series of steps was between 1951 and 1975; the second would be the era under United States v. Baker, 14 MJ 361; the third, and current era begins with United States v. Teters, 37 MJ 370 (CMA 1993).
1951 — 1975
The Uniform Code of Military Justice provides no rules for determining multiplicity of charges, findings, or sentences. Article 36, UCMJ, 10 USC § 836, delegates to the President the authority to prescribe “[pjretrial, trial, and post-trial procedures, including modes of proof,” in courts-martial, applying insofar as practicable “the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts,” so long as not inconsistent with the Code. Article 56, UCMJ, 10 USC § 856, delegates to the President the authority to prescribe the limits of court-martial punishment.
In paragraph 76<x(8) of the 1951 Manual for Courts-Martial, United States, the President prescribed a single test for determining the maximum authorized punishment for each of two or more offenses “arising out of the same act or transaction”: “The offenses are separate if each offense requires proof of an element not required to prove the other.” This rule was taken from Blockburger v. United States, supra. See Legal and Legislative Basis, 1951 Manual at 78.
Blockburger itself applies the pleadings-elements rather than the statutory-elements test. Blockburger claimed that two drug sales on successive days constituted one offense.
[Sjhortly after delivery of the drug which was the subject of the first sale, the purchaser paid for an additional quantity, which was delivered the next day____ The contention on behalf of petitioner [was] that these two sales, having been made to the same purchaser and following each other with no substantial interval of time between the delivery of the drug in the first transaction and the payment for the second quantity sold, constitute[d] a single continuing offense.
284 U.S. at 301-02, 52 S.Ct. 180.
The Court rejected the claim, stating:
The Narcotic Act does not create the offense of engaging in the business of selling the forbidden drugs, but penalizes any sale made in the absence of either of the qualifying requirements set forth. Each of several successive sales constitutes a distinct offense, however closely they may follow each other.
Id. at 302, 52 S.Ct. 180.
Notwithstanding this language in Block-burger, this Court criticized the “in vacuo” or “doctrinaire” approach taken in the Manual. United States v. Beene, 4 USCMA 177, 178, 15 CMR 177, 178 (1954). The Beene decision, authored by Judge Brosman, set forth a “societal norm” test. To reflect this *342 Court of Military Appeals decision, the 1969 Manual was changed to add the following language:
Care must be exercised in applying the general rale [the elements test] stated in the above paragraph as there are other rales which may be applicable, with the result that in some instances a final determination of whether two offenses are separate can be made only after a study of the circumstances involved in the individual case. The following are examples of rales under which offenses may not be separate although each offense requires proof of an element not required to prove the other: [there followed a discussion of four categories of cases — when the intent for each of several offenses is to be inferred from the same fact; when two offenses are committed as the result of a single impulse or intent; when the offenses involve violations of different social standards; and when the offenses involve the breach of separate duties].
Para. 76a(5), Manual for Courts-Martial, United States (1969 Revised ed.). As the Drafters’ Analysis makes clear, these new rales were merely restatements of those announced in Beene and other cases. See Analysis of Contents, 1969 Manual at 13-8 (Dept of the Army Pamphlet 27-2 (July 1970)).
Baker Era
In United States v. Baker, supra, the accused was charged with aggravated assault and communication of a threat. The offenses were committed during the same attack, while the accused was attempting to force the victim to drive him to an unspecified location in her automobile. The majority rejected a literal application of the Blockburger “elements” test based on the “additional” tests for multiplicity set forth in the 1969 Manual. Judge Cook, in dissent, leveled the criticism that some tests for multiplicity employed by the majority were “so subjective that, applied to the same facts, they can produce different results for different people.” 14 MJ at 372.
The majority in Baker decided that two charges were multiplicious for findings if either (1) one of the charges necessarily included all the elements of the other, or (2) the allegations of one charge “fairly embraced” the elements of the other charge. 14 MJ at 368. Applying these precepts, the majority concluded that the elements of communicating a threat were neither included nor fairly embraced within those of aggravated assault. Thus, for findings purposes, the offenses were separate. Nonetheless, the majority concluded the offenses were multiplicious for sentencing.

United States v. Teters

In Teters, 37 MJ at 370, we held that forgery and larceny of two checks were not multiplicious for findings, even though the forgery was the means by which the larceny was accomplished. Although the Court did not explicitly overrule Baker and its progeny (e.g., United States v. Allen, 16 MJ 395 (CMA 1983); United States v. Ward, 15 MJ 377 (CMA 1983)), our unanimous Court “buried” it[3] in favor of a multiplicity doctrine rooted more firmly in the Double Jeopardy Clause of the Fifth Amendment and Supreme Court precedent.
The applicable rale is that, where the same act ... constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.
Blockburger, 284 U.S. at 304, 52 S.Ct. 180; accord, Schmuck v. United States, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989).
A year later, we determined that two statutes can define one offense when one is a lesser-included of the other. See United States v. Foster, 40 MJ 140 (CMA 1994). In the years immediately following Teters, this Court made it abundantly clear that we rejected the “single impulse,” “fairly embraced,” and “ultimate offense” theories and tests for determining multiplicity. See United States v. Brownlow, 39 MJ 484 (CMA 1994); United States v. Traxler, 39 MJ 476 *343 (CMA 1994); United States v. Morrison, 41 MJ 482 (1995).
The law began to change in 1995 with the publication of United States v. Weymouth, 43 MJ 329 (1995). Prior to Weymouth, the Court had strictly adhered to a “statutory elements” approach when determining whether crimes were multiplieious with other offenses or lesser-included offenses. See id. at 333; see also United States v. Wheeler, 40 MJ 242 (CMA 1994). However, in Weymouth, the majority explained the difference between military and federal practice required that “in the military, the specification, in combination with the statute, provides notice of the essential elements of the offense.”
43 MJ at 333.
Historical differences between federal and military law in this regard should not be surprising. For one thing, unlike federal offenses, military offenses are not exclusively the product of statutes. Countless military offenses derive their elemental essence from regulations or orders, from customs of the service, or from traditional military crimes that have emerged from a military common law-like process. Arts. 90(2), 91(2), 92, 133, and 134, UCMJ, 10 USC §§ 890(2), 891(2), 892, 933, and 934, respectively. See Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 ... (1974). Mere recitation of statutory elements would provide servicemembers no notice whatever in such cases.
Id. at 335.
The following year saw a strengthening of the pleadings-elements approach to multiplicity issues, both here and in the Supreme Court. See Rutledge v. United States, 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996); Neblock, 45 MJ at 191; United States v. Oatney, 45 MJ 185 (1996). In Rutledge, the unanimous Supreme Court found that conspiracy to distribute cocaine was a lesser-included offense of a continuing criminal enterprise (CCE) offense, since the “in concert” element of the CCE offense signified agreement in a plan, and that was tantamount to a conspiracy. In other words, the “in concert” element of the CCE offense was based on the same agreement, as shown by the pleadings, as the conspiracy offense.
In Neblock, we were required to determine whether taking indecent liberties and committing indecent acts with the same child, but at different times, constituted one offense, since both infractions were violations of Article 134, UCMJ, 10 USC § 934. The majority in Neblock sustained the conviction of both offenses because each consisted of different acts at different times. Judge Sullivan, wilting the plurality opinion, rejected the pleadings-elements approach. In our separate opinions, Judge Cox and I both embraced the pleadings-elements approach as being truer to Blockburger’s prescription.
In Oatney, the Court dealt with two offenses laid under Article 134, communicating a threat and obstructing justice. The appellant contended that his communicating a threat was a lesser-included offense of the obstruction of justice he committed on the same date. The majority compared the elements of the two offenses and, finding that they were different, rejected the appellant’s multiplicity argument. Writing for the dissent, then-Chief Judge Cox again applied the pleadings-elements test in accordance .with Weymouth and determined that under the facts, the appellant had communicated his threat in order to obstruct justice. Thus, looking at the pleadings and the facts of the case, the dissent found multiplicity.
In more recent cases, we have found multiplicity based on the fact that lesser-included offenses are the same as the greater offenses under the Double Jeopardy Clause. See Britton, 47 MJ at 195; United States v. Savage, 50 MJ 244 (1999).
In resolving issues of multiplicity, we are guided always by the principle that courts may not give more punishment than the Congress and the President intended. See Rutledge v. United States, supra; Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); Brown v. Ohio, 432 U.S. at 165, 97 S.Ct. 2221. Where the pleadings and elements of two statutes define but one offense, the legislature does not intend to impose multiple punishments for that “same offense.” See Rutledge, supra; Whalen v. *344 United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). Accordingly, I would hold that whenever a lower court examines issues of multiplicity, it must do so in concert with legal precedent and fulfill its Article 66(c) mandate as a court of law, not one in equity.
The charges in this case were necessary to set forth the extent of appellee’s involvement with the explosives and marijuana. The pleadings in this case establish that appellee entered into a conspiracy with Corporal Lester R. Harris to wrongfully dispose of 1.25 lbs. of C^4 military explosive material. They also establish that to effect the object of the conspiracy, appellee and Corporal Harris sold the explosive material.
On April 14, 1998, appellee purchased 20 marijuana seeds and planted these seeds in 7 pots. These pots were found in appellee’s home 3 months later. The evidence in this case establishes important time elements. First, the explosives were transported by vehicle from one house to another and held for a number of weeks. Likewise, marijuana seeds were purchased in April and held for 3 months, at which time the plants would have produced marijuana for personal consumption or for distribution. Certainly these charges are not unreasonably multiplicious when one considers the historical examples given previously. Thus, under a pleadings approach, these are not multiplicious. However, I believe that we should adopt the approach of Judge Effron in Britton, 47 MJ at 204, conditionally dismissing Charge II and specifications 2 and 3 of Charge III. “The dismissal would become effective when direct review becomes final in the manner described in Article 71(c), UCMJ, 10 USC § 871(c).” Id.
Regarding Certified Issue II, I agree that Article 66(c) requires Courts of Criminal Appeals to decide which findings and sentence should be approved. In so doing, the Courts of Criminal Appeals must determine whether or not an issue has been raised either explicitly or implicitly in the trial court. On the other hand, the lower courts are not free to ignore clear guidance from this Court. See United States v. Allbery, 44 MJ 226 (1996); see also United States v. Tualla, 52 MJ 228 (2000). We have clearly said that unless multiplicity is raised and litigated in the court below, the issue is generally waived on appeal. See United States v. Lloyd, 46 MJ 19 (1997); Savage, 50 MJ at 245 (Crawford, J., concurring in the result). Just as we rejected the Air Force Court’s “bright line rule” concerning forfeiture of multiplicity issues in Lloyd, we should reject the Navy-Marine Corps Court’s sequel that multiplicity claims are never forfeited. Since appellee did raise the question of multiplicity involving a sale of G-4 at his court-martial, and the military judge denied the multiplicity motion as it related to appellee’s sentencing, it was proper for the court below to adjudicate the issue and grant appellee appropriate relief within the strictures of the law promulgated by the Congress, President, and superior courts.
Finally, I would hold that the lower court did err in granting appellee relief without finding that he suffered material prejudice. To hold otherwise ignores United States v. Powell, 49 MJ 460, 464 (1998), where we held:
[Wjhile Courts of Criminal Appeals are not constrained from taking notice of otherwise forfeited errors, they are constrained by Article 59(a), [UCMJ, 10 USC § 859(a)] because they may not reverse unless the error “materially prejudices the substantial rights of the accused.” Articles 59(a) and 66(c) serve to bracket their authority. Article 59(a) constrains their authority to reverse; Article 66(e) constrains their authority to affirm.
Contrary to appellant’s contention and the lower court’s finding, the Court of Criminal Appeals’ discretion to affirm only those findings and sentence which, based on the entire record, that court thinks should be affirmed is not some equitable doctrine that is separate and apart from that court’s duty to correct legal errors.
I would return this case to the Court of Criminal Appeals for further review consistent with the precedential views of our Court.

. This provision remained unchanged in paragraph 26b of the 1951 and 1969 (Revised ed.)
Manuals for Courts-Martial, United States.

. In determining multiplicity, there are three approaches: (I) statutory-elements test; (2) pleadings-elements test; and (3) evidentiary-elements test.

. See United States v. Teters, 37 MJ 370, 378 (Cox, J., concurring).