UNITED STATES, Appellee,

v.

Mark L. CARTER, Staff Sergeant, U.S. Army, Appellant.

No. 62,353.

CM 8801100.

U.S. Court of Military Appeals.

June 12, 1990.

For Appellant: *Captain Andrew G. Oosterbaan* (argued); *Lieutenant Colonel Russell S. Estey, Captain Jon W. Stentz* and *Captain Keith W. Sickendick* (on brief); *Colonel John T. Edwards* and *Captain Jeffrey J. Fleming.*

For Appellee: *Captain John J. Hogan* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Kathryn F. Forrester* (on brief); *Major Martin D. Carpenter.*

*Opinion of the Court*

SULLIVAN, Judge:

During May 1988, appellant was tried by a military judge sitting alone as a general court-martial at Fort Stewart, Georgia. Pursuant to his pleas, he was found guilty of conspiracy to commit murder and solicitation of another to commit murder, in violation of Articles 81 and 134, Uniform Code of Military Justice, 10 USC §§ 881 and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 20 years, forfeiture of $500.00 pay per month for 36 months, and reduction to pay grade E-1. The convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for 10 years, forfeiture of $320.00 pay per month for 36 months, and reduction to pay grade E-1. On March 14, 1989, the Court of Military Review affirmed the approved findings of guilty and the sentence in a short-form opinion.

This Court granted review on the following issue of law:

WHETHER THE MILITARY JUDGE ERRED IN FAILING, *SUA SPONTE,* TO DISMISS CHARGE II AND ITS SPECIFICATION (SOLICITATION TO COMMIT MURDER) AS MULTIPLICIOUS FOR FINDINGS WITH CHARGE I AND ITS SPECIFICATION (CONSPIRACY TO COMMIT MURDER).

We hold no such error occurred in this case. *See United States v. Stottlemire*, 28 MJ 477, 480 (CMA 1989).

Appellant was charged with and found guilty of conspiring with Sergeant First Class Herd to murder Sergeant Herd's wife, in violation of Article 81. The particular specification states that appellant

*did,* at Fort Benning, Georgia, Fort Stewart, Georgia and Liberty County, Georgia, between 14 February 1988 and 29 March 1988, *conspire with Sergeant First Class Stephen B. Herd,* [organization] *to commit an offense under the Uniform Code of Military Justice, to wit: the premeditated murder of Mrs. Diana Herd, and in order to effect the object of the conspiracy the said Staff Sergeant Mark L. Carter, did:* approach Sergeant Leslie C. Chancey, [organization] on or about 14 March 1988 and asked him to kill the wife of a friend of his for $2000.00 in four $500.00 payments; *the said Sergeant First Class Herd did:* travel from Fort Benning, Georgia, to Liberty County, Georgia and met with the said Sergeant Chancey on 26 March 1988, and gave him written directions, pictures of the said Mrs. Herd, and a map to the home of the said Mrs. Herd, and offered to pay the said Sergeant Chancey $2000.00 in four $500.00 installments for killing the said Mrs. Herd; *the said Sergeant First Class Herd did:*

make a personal check payable to "Mark Carter" in the amount of $500.00 and left the check in the said Staff Sergeant Carter's residence at Lot # 17, Victory Manor Trailer Park, Liberty County, Georgia; and *the said Sergeant First Class Herd did:* leave the check in an envelope which had the following message written inside of it: "I think things are going to work out, thanks" or words to that effect.

(Emphasis added.)

He was also charged with and found guilty of soliciting Sergeant Chancey to kill Mrs. Herd, in violation of Article 134. That specification states that appellant

*did,* at Fort Stewart, Georgia and Liberty County, Georgia, between 14 March 1988 and 29 March 1988, *wrongfully solicit Sergeant Leslie C. Chancey,* [organization] *to murder Mrs. Diana Herd, by asking the said Sergeant Chancey to kill a friend's wife for $2000.00 in four $500.00 payments; by arranging a meeting between the said Sergeant Chancey and Sergeant First Class Stephen B. Herd,* [organization] the said Sergeant First Class Herd being the person who wanted his wife killed.

(Emphasis added.) No motion concerning multiplicity for findings was made by the defense at trial. However, the military judge, on defense request and without government opposition, treated these offenses as multiplicious for sentencing.

---

■ We first note that no indication is provided in the legislative history of either Article 81 or Article 134 whether multiple convictions for conspiracy and solicitation might arise in the same transaction. *See United States v. Stottlemire, supra* at 479; *United States v. Mitchell,* 15 MJ 214 (CMA 1983). *See generally United States v. Zubko,* 18 MJ 378, 381–82 (CMA 1984). We also note that appellant was not convicted of soliciting his fellow conspirator, Sergeant Herd, to join a conspiracy to kill Mrs. Herd or to personally kill the intended victim. Accordingly, we need not decide whether the crime of conspiracy necessarily includes the crime of solicitation of a person who later joins the conspiracy.[1] *See generally Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985).

Otherwise, comparison of the elements of these two offenses convinces us that each contains an element different from the other as required under the test of

---

1. *See United States v. Kauble,* 22 MJ 179 (CMA 1986) (summary disposition); *but see United States v. Cook,* 17 MJ 57 (CMA 1983) (order granting petition), *rev'd,* 18 MJ 141, 142 (CMA 1984).

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *See generally United States v. Woodward*, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985). The former offense requires an overt act by a conspirator evidencing the conspiracy's operation, while the latter requires an act by any person inducing another to commit a crime. *See United States v. Chaverra–Cardona*, 879 F.2d 1551 (7th Cir.1989); *United States v. Gabriel*, 810 F.2d 627 (7th Cir.1987).

■ We also will consider the specifications of which he was found guilty under the "fairly embraced" test for lesser-included offenses. *United States v. Baker*, 14 MJ 361, 368 (CMA 1983). This test was derived from the decision of this Court in *United States v. Duggan*, 4 USCMA 396, 399–400, 15 CMR 396, 399–400 (1954), where Judge Latimer said:

Obviously under our interpretation of included offenses, the Manual definition of the offense of riot could not be included within mutiny committed by passive refusal to obey orders. Nor could it be included in a case where one person committed a violent mutiny. However, in the instant case, *the allegations and proof* show a mutiny committed in concert with others through violence, and it is toward that type of an offense that our consideration and discussion must be directed.

We are aware that riot is not listed with mutiny in the Table of Commonly Included Offenses (Appendix 12, Manual for Courts–Martial, *supra* [United States, 1951]). However, the note to that table expressly states that it is not all-inclusive. Moreover, as has been shown, there are cases of mutiny which could not include riot and for that reason it might cause confusion to identify it in a table as an included offense. *Accordingly, we must look to the allegations of the specification, and proof in support thereof, in each case to determine whether a lesser offense is placed in issue.* While the standards we have adopted in considering whether one offense is included in another may be

more generous than those prescribed by other courts, in an unbroken line of decisions we have made the test turn on both the charge and the evidence. When both offenses are substantially the same kind so that accused is fairly apprised of the charges he must meet and the specification alleges fairly, and the proof raises reasonably, all elements of both crimes, *we have held they stand in the relationship of greater and lesser offenses.* In most settings our rule is identical with, but in some instances it varies a little from, the Manual requirement. The latter is found in paragraph 158 of the Manual and it states:

"An offense found is necessarily included in an offense charged if all of the elements of the offense found are necessary elements of the offense charged. An offense is not included within an offense charged if it requires proof of any element not required in proving the offense charged or if it involves acts of which the accused was not apprised upon his arraignment."

(Emphasis added.) *See United States v. Thacker*, 16 USCMA 408, 410, 37 CMR 28, 30 (1966). *See generally United States v. Zupancic*, 18 MJ 387, 389–90 (CMA 1984); *United States v. Zubko, supra* at 382–83 n.6.

The appropriateness of such a broad test for determining a lesser-included offense has become increasingly suspect. *See Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); *but see* para. 2(b)(1), Part IV, Manual for Courts–Martial, United States, 1984. *See generally Jones v. Thomas*, — U.S. —, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989). In any event, even under the so-called "fairly embraced" test, there is no need to dismiss either the conspiracy specification or the solicitation specification in this case. *Cf. United States v. Stottlemire, supra.*

Both these specifications contain a particular factual allegation that appellant approached Chancey and asked him to kill Herd's wife for $2,000 to be paid in four

$500 payments. In the conspiracy specification this allegation constituted an overt act by appellant which purportedly showed the existence of his conspiracy with Sergeant Herd. *Id.* at 480. In the solicitation specification, it was alleged and found to be a part of appellant's act of criminal inducement of Chancey which was required to establish that offense. *See United States v. Isbell,* 1 USCMA 131, 133, 2 CMR 37, 39 (1952).

Nevertheless, we note the conspiracy specification did not contain the factual allegation that appellant arranged a meeting between Chancey and Herd as was additionally alleged and proven as part of the solicitation specification. Moreover, the solicitation specification did not contain any allegation concerning Sergeant Herd's conduct at that meeting or thereafter in furtherance of the conspiracy to murder Mrs. Herd. However, these acts were parts of the conspiracy specification of which he was convicted. Strictly speaking, therefore, the conspiracy specification, although partially overlapping, did not fairly embrace this solicitation specification as a lesser-included offense. *See United States v. Baker, supra* at 368.

Finally, we note that the validity of appellant's conspiracy conviction under Article 81 is not dependent on the factual finding that he asked Sergeant Chancey to kill Sergeant Herd's wife. The pertinent codal provision states:

> Any person subject to this chapter who conspires with any other person to commit an offense under this chapter shall, *if one or more of the conspirators does an act to effect the object of the conspiracy,* be punished as a court-martial may direct.

(Emphasis added.) Clearly, an act manifesting the existence of the conspiracy which is performed by a conspirator other than appellant will suffice. *See* para. 5b(2)[2] and para. 5c(4),[3] Part IV, 1984 Manual, *supra.* Numerous overt acts by Herd were also alleged and found in the challenged conspiracy specification so that the allegation concerning appellant's solicitation of Chancey may be treated as mere surplusage. Accordingly, the overlapping portion of the conspiracy specification could be stricken, thereby avoiding any suggestion of multiplicity in this case. *See generally United States v. Sorrell,* 23 MJ 122, n. 1 (CMA 1986). We discern no possibility of prejudice as to sentence by this action.

## DECISION

The specification of Charge I is amended by striking the words: "the said Staff Sergeant Mark L. Carter, did: approach Sergeant Leslie C. Chancey, [organization] on or about 14 March 1988 and asked him to kill the wife of a friend of his for $2000.00 in four $500.00 payments."

The decision of the United States Army Court of Military Review is affirmed as to Charge I and its specification (as amended), Charge II and its specification, and the sentence. The finding of guilty as to the stricken language is set aside, and that portion of the specification is dismissed.

Chief Judge EVERETT concurs.

2. That, while the agreement continued to exist, and while the accused remained a party to the agreement, the accused *or at least one of the co-conspirators performed an overt act* for the purpose of bringing about the object of the conspiracy.
(Emphasis added.)

3. (a) *The overt act must be* independent of the agreement to commit the offense; must take place at the time of or after the agreement; *must be done by one or more of the conspirators, but not necessarily the accused;* and must be done to effectuate the object of the agreement.
(b) The overt act need not be in itself criminal, but it must be a manifestation that the agreement is being executed. Although committing the intended offense may constitute the overt act, it is not essential that the object offense be committed. *Any overt act is enough, no matter how preliminary or preparatory in nature, as long as it is a manifestation that the agreement is being executed.*
(Emphasis added.)

COX, Judge (concurring):

Interesting enough, every conspiracy involves a "solicitation" to commit a crime. That is how a conspiracy begins. I write only to raise a question. If the solicitee joins the conspiracy, is the solicitation offense subsumed into the conspiracy?