UNITED STATES, Appellee,

v.

Specialist Dana L. DEAN, 298–68–1876
United States Army, Appellant.

ARMY 9401502.

U.S. Army Court of Criminal Appeals.

17 July 1996.

For Appellant: Captain Eric S. Krauss, JA
(argued); Major Michael A. Egan, JA (on
brief); Major J. Frank Burnette, JA.

For Appellee: Captain Joanne P. Te-
treault, JA (argued); Colonel John M. Smith,
JA; Lieutenant Colonel Eva M. Novak, JA;
Major Anthony P. Nicastro, JA (on brief).

Before GRAVELLE, JOHNSTON, and
ECKER Appellate Military Judges.

OPINION OF THE COURT

ECKER, Judge:

Contrary to her pleas, a general court-
martial composed of officer and enlisted
members convicted appellant of conspiracy,
willful disobedience of the order of an officer,
making a false official statement, aggravated
assault (one specification by a means likely to
produce grievous bodily harm and one speci-
fication of intentionally inflicting grievous
bodily harm), and solicitation in violation of
Articles 81, 90, 107, 128, and 134, Uniform
Code of Military Justice, 10 U.S.C. §§ 881,
890, 907, 928, and 934 (1988) [hereinafter
UCMJ]. Appellant was sentenced to a bad-
conduct discharge, confinement for two
years, and reduction to Private E1. The
convening authority approved the sentence.

Appellant asserts that her convictions for
solicitation and conspiracy and her convic-
tions for the two aggravated assaults are,
respectively, multiplicious and requests ap-
propriate relief. We agree that relief is war-
ranted, but for different reasons stated be-
low. The following facts frame the issues.

FACTS

Appellant was "thrown over" for another
female by her boyfriend, Specialist (SPC) C.

All parties were members of the same unit. On 9 March 1994, appellant confronted him and things turned physical. In response to her aggressiveness, SPC C hit her and pushed her against a wall. Although her physical injuries were slight, the bruise to her ego was apparently significant. Due to this altercation, appellant's commander gave her a valid order to stay away from SPC C.

On 10 March 1994, appellant brought Mr. H on post.[1] Ultimately, appellant found and confronted SPC C outside the gymnasium. As appellant engaged SPC C in conversation, Mr. H attacked him from behind and knocked him to the ground. Appellant and Mr. H then savagely beat SPC C using a variety of means and force to include throwing him down onto a concrete sidewalk and ramming his head into a concrete and steel storm drain opening. Mr. H perpetrated the bulk of the assaultive acts on SPC C; appellant's actions were not well defined. Some witnesses claimed she only hit or kicked SPC C with her hands and feet. Others saw her wield a stick or club. Still others suggested no physical involvement. However, all of the testimony established appellant's presence and her active aiding and abetting of the beating of SPC C.

Specialist C struggled to fend off the assault and was finally able to flee the attack, running towards the nearby gymnasium. As Mr. H pursued, appellant yelled "don't let him get into the door" or words to that effect. However, the victim was ultimately successful in reaching safety inside the gym. This is the only direct evidence of record of any request by appellant to Mr. H or anyone else, to engage in violence against SPC C or anyone else.

Specialist C suffered a variety of injuries, including a deep laceration which reached the skull. His injuries were initially diagnosed as life threatening.

Subsequent to the attack, appellant was read her rights and questioned by two separate commanders concerning whether she had violated the order to "stay away." Appellant answered the questions, "No."

This two-day course of conduct resulted in appellant initially facing twenty-one specifications.[2] This was reduced, on government motion, to ten specifications on the day of trial. The defense unsuccessfully attempted to further reduce the number of specifications through a timely multiplicity motion.

## DISCUSSION

■ The appellant first contends that the military judge erred by failing to instruct that solicitation to commit aggravated assault was a lesser-included offense of conspiracy to commit aggravated assault. The United States Court of Appeals for the Armed Forces recently held in *United States v. Carroll*, 43 M.J. 487, 489 (1996), "that the offenses of solicitation under Article 134 and conspiracy under Article 81 are separate offenses."[3] This precedent, however, does not end our inquiry. For the reasons noted below the *Carroll* decision is not determinative in appellant's case.

Upon review of the record, we find no direct evidence, and inadequate circumstan-

1. Mr. H, a civilian, was the father of the appellant's child and sought to marry her. What, if any, plan or purpose lay behind the appellant's act of bringing Mr. H onto post was never established during the trial testimony of either Mr. H or appellant.

2. The exact motivation for this exuberant charging is unclear. Whatever the reason, this case offers a classic example of an unreasonable multiplication of charges condemned by the Manual for Courts–Martial. Manual for Courts–Martial, United States, 1984 [hereinafter MCM, 1984], Rule for Courts–Martial 307(c)(4), discussion [hereinafter R.C.M.]; *see also United States v. Foster*, 40 M.J. 140, 144 n. 4 (C.M.A.1994).

3. Before the *Carroll* decision, Judge Cox observed in *United States v. Carter*, 30 M.J. 179

(C.M.A.1990), that *"every conspiracy involves a 'solicitation' to commit a crime. That is how a conspiracy begins.... If the solicitee joins the conspiracy, is the solicitation offense subsumed into the conspiracy?" Id.* at 183 (emphasis added). Arguably, this comment may overstate the matter. *See* MCM, 1984, Part IV, para. 5c(2); *cf.* R.C.M. 307(c)(4), discussion. Further, while *Carroll* appears to answer this question, the unique facts of that case did not squarely raise the issue of separation by time and/or circumstances between the offenses. The opinion contains four separate concurrences. Two judges (including Judge Cox) specifically refused to join in the lead opinion's holding, believing the issue was not properly before the court.

tial evidence, supporting appellant's conviction for solicitation. This offense under Article 134, UCMJ, is explained as follows: "The offense is complete when a solicitation is made or advice is given *with the specific intent to influence another to commit*" an offense under the UCMJ. MCM, Part IV, para. 105c, incorporating para. 6c (emphasis added). On the other hand, the law of principals states that "Any person ... who (1) commits ... or aids, abets, *counsels, commands, or procures* [commission of an offense punishable under the UCMJ] ... is a principal." UCMJ art. 77 (emphasis added). This portion of the statute involves what is commonly referred to as the concept of "aider and abettor."

■ The import of the language defining solicitation is creative and prospective: that is, seeking to induce conduct by another that that person was not already predisposed to do or already engaged in. Thus, it is behavior which seeks to obtain or bring into existence conduct that has not begun or been contemplated.

■ The focus of the aider and abettor concept of principals is involvement in current and/or ongoing activity. While there may be a prospective and creative element to this definition, it is more that of guiding another through the process of accomplishing the offense.

The government's theory of the case is summed up in trial counsel's argument at trial. There he asserted that appellant's call to Mr. H, "don't let him get into the door," made during the ongoing beating, constituted "solicitation or inducement of [Mr. H] to commit a crime." There is no reference to any other acts or behavior by appellant that could be characterized as a solicitation separate from appellant's counsel and command to Mr. H during the ongoing beating of the victim. Upon these facts alone, the case was submitted to the members.

Factually, this call to Mr. H was no more than appellant's urging Mr. H to prevent the victim from frustrating her desire to continue the beating. This is aiding and abetting rather than solicitation. While there may have been an earlier solicitation which led to the participation of Mr. H in the assault, there is no evidence to elevate this theory beyond mere speculation. Considering the alternate ways that a conspiracy can be formed, this speculation fails to rise to the level of proof beyond a reasonable doubt.

Given this state of the evidence, pursuant to our unique fact-finding powers under Article 66(c), UCMJ, we are not convinced beyond a reasonable doubt of the appellant's guilt of Specification 1 of Charge VI, solicitation. Accordingly, appellant's conviction for that offense cannot be sustained.

■ The appellant next contends that the military judge erred in failing to find the charge of assault by a means likely to produce grievous bodily harm multiplicious with the charge of intentionally inflicting grievous bodily harm.[4] In this regard, we note that there is no evidence of a separate and discrete assault upon SPC C by appellant. In essence, SPC C was beaten by appellant and Mr. H acting as the left and right hand of their criminal combination. While one of those "hands" appears to have been stronger and more effective than the other, this concert of conduct nevertheless legally and factually supports appellant's conviction for aggravated assault by intentionally inflicting grievous bodily harm (Specification 4, Charge V).

However, the appellant also stands convicted of aggravated assault by a means likely to produce grievous bodily harm (Specification 3, Charge V) based on this same assaultive conduct. Given the facts and circumstances behind these convictions, we hold that the finding of guilty of Specification 3 of Charge V cannot be simultaneously sustained with the finding of guilty of Specification 4 of that charge. R.C.M. 307(c)(4), discussion. *See generally* MCM, 1984, Part IV, para. 54d(7); *United States v. Vigil,* 3 U.S.C.M.A. 474, 13 C.M.R. 30 (1953).

---

4. The military judge did rule the two specifications *multiplicious for sentencing.* However, this distinction between multiplicity for findings and for sentencing appears to have been eliminated as a component of multiplicity analysis. *United States v. Weymouth,* 43 M.J. 329, 336 (1995) (citing *United States v. Morrison,* 41 M.J. 482, 483 (1995)).

We have reviewed the remaining assignments of error involving the so-called "exculpatory no" doctrine and find no merit to them. *United States v. Sanchez*, 39 M.J. 518 (A.C.M.R.1993) (proper advisement of right to remain silent before accused's statement precludes application of "exculpatory no" doctrine). Similarly, we have considered the matters submitted by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them also to be without merit.

The findings of guilty of Specification 1 of Charge VI and of Specification 3 of Charge V are set aside and those specifications are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record, we affirm only so much of the sentence as provides for a bad-conduct discharge, confinement for twenty-two months and reduction to Private E1.

Senior Judge GRAVELLE and Judge JOHNSTON concur.