UNITED STATES, Appellee

v.

Matthew W. GLADUE, Staff Sergeant
U.S. Air Force, Appellant

No. 08-0452

Crim. App. No. 36580

United States Court of Appeals for the Armed Forces

Argued December 3, 2008

Decided April 28, 2009

STUCKY, J., delivered the opinion of the Court, in which ERDMANN
and RYAN, JJ., joined.  BAKER, J., filed a separate opinion
concurring in the result, in which EFFRON, C.J., joined.


Counsel


For Appellant:  Captain Tiffany M. Wagner (argued); Major
Shannon A. Bennett and Captain Griffin S. Dunham (on brief).


For Appellee:  Captain Naomi N. Porterfield (argued); Colonel
Gerald R. Bruce and Major Jeremy S. Weber (on brief); Major
Matthew S. Ward and Captain Brendon K. Tukey.


Military Judge:  Donald A. Plude


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

We granted review to determine whether Appellant's pretrial agreement (PTA) to "waive any waiveable [sic] motions" barred Appellant from asserting claims of multiplicity or multiplication of charges on appeal. We find that under these facts it did, and affirm.

This case began when Appellant brought a firearm onto Robins Air Force Base in violation of Base Instruction 31-101. Upset with the treatment he had received from two of his supervising noncommissioned officers, Appellant communicated to friend and coworker Staff Sergeant Jeremy Green detailed and apparently sincere threats to kill Master Sergeant Clifford Walton, Appellant's flight chief and second-level supervisor, and Technical Sergeant Anthony Staggers, his immediate supervisor. While in pretrial confinement at the Houston County Detention Center in Perry, Georgia, for these offenses, Appellant concocted a plan to hire a contract killer to murder the principal witness to the threats. At Appellant's request, a fellow prisoner put him in contact with a purported contract killer, in actuality an undercover law enforcement officer.

Appellant was tried before a general court-martial consisting of a military judge sitting alone. In return for a ten-year cap on any sentence to confinement and the dismissal of certain additional specifications, Appellant agreed to a PTA

2

requiring him to plead guilty to the following offenses:  one specification of attempted conspiracy to murder; one specification of conspiracy to murder; one specification of failure to obey an order or regulation; two specifications of communicating a threat; one specification of endeavoring to impede a court-martial in violation of Article 134; and two specifications of solicitation of murder.  Articles 80, 81, 92, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 881, 892, 934 (2000).

In accordance with his pleas, Appellant was convicted of these offenses and sentenced by the military judge to a dishonorable discharge, confinement for eighteen years, forfeiture of all pay and allowances, and reduction to E-1.  Under the terms of the PTA, the convening authority approved only so much of the sentence as extended to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to E-1.  The United States Air Force Court of Criminal Appeals (CCA) affirmed the findings and sentence.  United States v. Gladue, 65 M.J. 903, 906 (A.F. Ct. Crim. App. 2008).

## I.  The Pretrial Agreement

In the PTA, Appellant agreed to "waive any waiveable [sic] motions" and stated that "My defense counsel have fully advised me of . . . any defenses that might apply. . . .  I fully

3

understand their advice and the meaning, effect, and consequences of this plea." At the trial, the following colloquy took place:

> MJ: In particular, do you understand that this term of you [sic] pretrial agreement precludes this court or any appellate court from having the opportunity to determine if you are entitled to any relief upon those motions?
>
> ACC: Yes, sir.
>
> MJ: Essentially it is a speak now or forever hold your peace scenario. The motion would have to be raised before entering a plea and if you don't do so, then you lose the ability to argue them later on. Do you understand that?
>
> ACC: Yes sir, I do.
>
> MJ: When you elected to give up the right to litigate these motions and I am going to be discussing with your counsel shortly what these motions are, did your defense counsel explain this term of the pretrial agreement and the consequences to you?
>
> ACC: Yes sir, they did.
>
> MJ: Did anyone force you to enter into this term of your pretrial agreement?
>
> ACC: No, sir.
>
> MJ: Defense counsel, which side originated the waiver of motions provision?
>
> CIV DC: The prosecution did.
>
> MJ: SSgt Gladue, although the government originated this term of your pretrial agreement, did you freely and voluntarily agree to this term of your pretrial agreement in order to receive what you believe to be a beneficial pretrial agreement?

4

        ACC:  Yes sir, I did.

    The military judge then went on to discuss with Appellant's civilian defense counsel certain motions.  These included (1) a motion for change of venue, (2) a motion to suppress, (3) a motion for continuance, and (4) the defense of entrapment.  Appellant acknowledged that he had discussed these possible motions with his counsel and, as part of the PTA offer, decided to affirmatively waive raising them.  Motions relating to multiplicity and unreasonable multiplication of charges were not among those discussed by the military judge.

    Before the CCA, Appellant argued that his conviction on the two specifications of solicitation to murder were multiplicious with the specifications of impeding a trial by soliciting another to commit murder and the attempted conspiracy to murder.  Gladue, 65 M.J. at 904.  In the alternative, Appellant argued that the charges constituted an unreasonable multiplication of charges.  Id.

    The CCA rejected this argument.  The court held that the claims of unreasonable multiplication of charges and multiplicity were waived.  Id. at 905-06.  The CCA found that the military judge conducted an "extensive inquiry" into Appellant's understanding and acknowledgment of each provision of the PTA.  Id. at 904.  Appellant's agreement to the PTA was

made freely and voluntarily, and thus the CCA found that as a "matter of fact" Appellant "voluntarily relinquished his rights at trial and on appeal to raise 'waivable motions.'" Id.

## II.  Discussion

The granted issue arises out of the failure of military courts to consistently distinguish between the terms "waiver" and "forfeiture." See United States v. Harcrow, 66 M.J. 154, 156 n.1 (C.A.A.F. 2008). "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" United States v. Olano, 507 U.S. 725, 733 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). The distinction between the terms is important. If an appellant has forfeited a right by failing to raise it at trial, we review for plain error. Harcrow, 66 M.J. at 156 (citing Olano, 507 U.S. at 733-34). When, on the other hand, an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal. Id. (citing Olano, 507 U.S. at 733-34).

The prohibition against multiplicity is grounded in compliance with the "constitutional and statutory restrictions against Double Jeopardy." United States v. Quiroz, 55 M.J. 334, 337 (C.A.A.F. 2001). The related policy against the

unreasonable multiplication of charges, Rule for Courts-Martial (R.C.M.) 307(c)(4), addresses the danger of prosecutorial overreaching.  Quiroz, 55 M.J. at 337.

Appellant asserts that an unconditional guilty plea does not waive multiplicity claims and that "the policy behind multiplicity dictates that the existence of a pretrial agreement does not prevent an appellant from raising issues waived at trial."  Citing United States v. Heryford, 52 M.J. 265, 266 (C.A.A.F. 2000), and United States v. Britton, 47 M.J. 195, 198-99 (C.A.A.F. 1997), Appellant argues that this is a case of plain error, in that the specifications complained of are "facially duplicative," that plain error exists, and that the waiver provision in the PTA is therefore ineffective.

This case is distinct from the cases relied upon by Appellant because here Appellant's pretrial agreement expressly waived all waivable motions.  We hold that Appellant waived, rather than forfeited these issues.  In United States v. Lloyd, this Court recognized that even in cases in which an appellant failed to raise multiplicity at trial, he would be entitled to relief if the specifications were facially duplicative.  46 M.J. 19, 23 (C.A.A.F. 1997).  But we added a caveat:  "Express waiver or voluntary consent, however, will foreclose even this limited form of inquiry."  Id.  Although Lloyd only addressed

multiplicity, we see no reason why the same caveat regarding express waiver or consent should not apply to the concept of unreasonable multiplication of charges, and therefore adopt it.

Admittedly, motions relating to multiplicity and unreasonable multiplication of charges were not among those subsequently discussed by the military judge and the civilian defense counsel. However, this does not affect the validity of the waiver. The text of the PTA unambiguously agrees to "waive any waiveable [sic] motions," and after the military judge conducted a detailed, careful, and searching examination of Appellant to ensure that he understood the effect of the PTA provision, Appellant explicitly indicated his understanding that he was giving up the right "to make any motion which by law is given up when you plead guilty." (Emphasis added.)

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." United States v. Mezzanatto, 513 U.S. 196, 201 (1995). That includes double jeopardy, the basis of the multiplicity objection. See id. (citing Ricketts v. Adamson, 483 U.S. 1, 10 (1987) (double jeopardy defense waivable by pretrial agreement)). The caution against the unreasonable multiplication of charges is not a constitutional imperative, but rather a presidential policy. United States v. Weymouth,

43 M.J. 329, 335 (C.A.A.F. 1995).  In the absence of an explicit prohibition, a party may knowingly and voluntarily waive such a nonconstitutional right in a PTA.  See Shutte v. Thompson, 82 U.S. 151, 159 (1873) (stating that "[a] party may waive any provision, either of contract or of a statute, intended for his benefit"); United States v. Edwards, 58 M.J. 49, 52 (C.A.A.F. 2003) (citing Mezzanatto, 513 U.S. at 201).  Although the President has prohibited the waiver of certain fundamental rights in a PTA, neither multiplicity nor the unreasonable multiplication of charges is among them.  R.C.M. 705(c)(1)(B). Appellant's express waiver of any waivable motions waived claims of multiplicity and unreasonable multiplication of charges, and extinguished his right to raise these issues on appeal.  This being the case, we need not reach the issue of whether the specifications were in fact facially duplicative.

## III.  Decision

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Gladue, No. 08-0452/AF

BAKER, Judge, with whom EFFRON, Chief Judge, joins
(concurring in the result):

I agree with the general proposition that an accused can
waive waivable motions, which is a circular legal truism, of
course.  However, I would not find waiver, express or otherwise,
in this case because the military judge catalogued the motions
at issue and he did not include either multiplicity or
unreasonable multiplication of charges among the motions waived.

As the majority notes, waiver, the "intentional
relinquishment or abandonment of a known right," differs from
forfeiture, "the failure to make the timely assertion of a
right."  United States v. Gladue, __ M.J. __ (6) (C.A.A.F. 2009)
(quoting United States v. Olano, 507 U.S. 725, 733 (1993)
(quotation marks omitted)).  Generally, waivers of fundamental
constitutional rights, including protection from double
jeopardy, must be "knowing, intelligent, and voluntary."
Ricketts v. Adamson, 483 U.S. 1, 23 (1987) (citing Johnson v.
Zerbst, 304 U.S. 458, 464 (1938)).  See U.S. Const. amend. V
("No person shall . . . be subject, for the same offence, to be
twice put in jeopardy of life or limb.").  Here, the record
reveals no indication that Appellant knowingly, voluntarily, and
intelligently waived his double jeopardy claims.  Although
Appellant expressly waived all waivable motions, the military
judge delimited that waiver by cataloguing the specific motions

and issues waived.  This catalogue did not include multiplicity

or an unreasonable multiplication of charges:

> MJ:  When you elected to give up the right to
> litigate these motion [sic] and I am going to be
> discussing with your counsel shortly what these
> motions are, did your defense counsel explain
> this term of the pretrial agreement and the
> consequences to you?
>
> ACC:  Yes sir, they did.
>
> . . . .
>
> MJ: Defense counsel, what do you believe to be
> the factual basis for any motions covered by the
> pretrial agreement?  Per one of the 802
> conferences that we held prior to this trial I
> was informed of two potential motions.  One of
> which you had submitted, motion for change of
> venue.  I was also advised of a motion to
> suppress evidence that would effect --
>
> CIV DC: Those items which were found in the jail.
>
> . . . .
>
> MJ: Please explain to me or educate me if you
> would on what you believe is the factual basis of
> any motions covered by this term of the pretrial
> agreement?
>
> CIV DC: Outside of the ones that you just
> described which [sic] will be the motion for
> continuance --
>
> . . . .
>
> CIV DC: The only other one that we can describe,
> which was somewhat eluded [sic] to by the
> prosecution, would be the entrapment defense.  Of
> course as we know that can either be raised by a
> motion or upon the trial of the case, whatever
> the evidence would be in that particular matter.
> We would waive that particular motion as well.

. . . .

MJ: SSgt Gladue, the motion for the change of venue was made and a possible ruling could have been that your trial would have been moved to another location other than being held [sic] at or near Robins AFB.  It wouldn't necessarily effect [sic] any of the charges against you, just the location of your trial.  Do you understand that?

ACC: Yes, sir.

. . . .

MJ: The entrapment issue and the motion to suppress, if they were granted, that could result in -- well, with regard to the suppression motion, the inability of the government to use that evidence to prove your offense which could result in a dismissal of those effective charges. Similarly the entrapment offense, if the government was unable to prove beyond a reasonable doubt that you were not entrapped, that similarly could result with respect of a finding of not guilty.  Possibly a motion for finding him not guilty could be approved by the court with regard to some or all of the additional charges or second additional charges.

. . . .

MJ: SSgt Gladue, do you understand that if these motions were made and granted by me that there is a possibility that the relief that I've discussed, specifically dismissal of some or all of those effected [sic] charges could result?

ACC: Yes, sir.

MJ: I said possibility because at this point in time no one knows for certain whether or not it would have that effect.  Have you discussed those motions with your defense counsel?

ACC: Yes sir, I have.

3

>       MJ: Knowing what your defense counsel and I have told you, do you want to give up making those motions in order to get the benefit of your pretrial agreement?
>
>       ACC: Yes sir, I do.

The accused, especially in a plea context, looks to the military judge to explain the law and to ensure he understands the terms of his pretrial agreement, as well as the consequences and meaning of his plea.  The military judge did so in this case.  Nonetheless, the majority considers the military judge's explanation irrelevant to Appellant's understanding of his plea and its terms.  I do not see how we can determine Appellant's plea was knowing and voluntary if we do not assess it in the context in which it was explained on the record to Appellant. See United States v. Smith, 56 M.J. 271, 272-73 (C.A.A.F. 2002) ("To ensure that the record reflects the accused understands the pretrial agreement and that both the Government and the accused agree to its terms, the military judge must ascertain the understanding of each party during the inquiry into the providence of the plea.").

Further, an accused cannot silently waive appellate review of plain error.  See United States v. Branham, 97 F.3d 835, 842 (6th Cir. 1996) (reviewing for plain error because failure to take affirmative steps to waive double jeopardy claims constituted forfeiture rather than waiver); United States v.

Lloyd, 46 M.J. 19, 22 (C.A.A.F. 1997) ("[I]n the absence of an express waiver or consent, we have not abandoned the doctrine of plain error with respect to multiplicious offenses."). Waiver of waivable motions should be done on the record and expressly. Otherwise, the military judge and appellate courts will not be in a position to assess whether the waiver is knowing and voluntary.

That being said, I concur in the result because, waiver or not, there is no plain error in this case. There is no error because the charges were not facially duplicative and did not represent an unreasonable multiplication of charges. See United States v. Roderick, 62 M.J. 425, 433 (C.A.A.F. 2006) ("Multiplicity and unreasonable multiplication of charges are two distinct concepts. While multiplicity is a constitutional doctrine, the prohibition against unreasonable multiplication of charges is designed to address prosecutorial overreaching.") (citing United States v. Quiroz, 55 M.J. 334, 337 (C.A.A.F. 2001)).

First, the charges were not "facially duplicative, that is, factually the same." United States v. Heryford, 52 M.J. 265, 266 (C.A.A.F. 2000) (quotation marks omitted). To the contrary, the charges included distinct elements. See United States v. Hudson, 59 M.J. 357, 359 (C.A.A.F. 2004) ("Under [the elements] test, the court considers 'whether each provision requires proof

of a fact which the other does not.'") (quoting Blockburger v.

United States, 284 U.S. 299, 304 (1932)).  Although

Specifications 1 and 4 of Additional Charge II both address

Appellant's "solicit[ation of] an undercover law enforcement

known to the accused as 'Mike Williams' to murder Staff Sergeant

Jeremy Green," they are distinct because Specification 1

includes the additional element that the solicitation impeded

Appellant's trial by court-martial.[1]  Whereas solicitation

requires "intent that the offense actually be committed,"

Specification 1 requires additional proof that Appellant

committed the offense of solicitation to "endeavor to impede a

---

[1] As stated in the charge sheet:

> ADDITIONAL CHARGE II, Violation of the UCMJ, Article 134
>
> Specification 1:  In that [Appellant] did, at or near Perry, Georgia, between on or about 16 July 2004 and on or about 13 October 2004, wrongfully endeavor to impede a trial by court-martial in the case of the United States vs. Staff Sergeant Matthew W. Gladue, by soliciting an undercover law enforcement officer known to the accused as "Mike Williams" to murder Staff Sergeant Jeremy Green, a witness in the case of United States vs. Staff Sergeant Matthew W. Gladue.
>
> . . . .
>
> Specification 4:  In that [Appellant] did, at or near Perry, Georgia, between on or about 16 July 2004 and on or about 13 October 2004, wrongfully solicit an undercover law enforcement officer known to the accused as "Mike Williams" to murder Staff Sergeant Jeremy Green.

trial by court-martial."  Manual for Courts-Martial, United
States pt. IV, para. 105.b(2) (2005 ed.) (MCM).

Further, the specification of the Second Additional Charge
departs from Specification 3 of Additional Charge II because,
even though it similarly addresses the role of Christopher
Carter, it also addresses the payment of money, the involvement
of Appellant's wife, and the role of "Mike Williams" in
Appellant's scheme.[2]  Additionally, conspiracy is a distinct

---

[2] As stated in the charge sheet:

> ADDITIONAL CHARGE II, Violation of the UCMJ, Article
> 134
>
> . . . .
>
> Specification 3:  In that [Appellant] did, at or near
> Perry, Georgia, between on or about 16 July 2004 and
> on or about 13 October 2004, wrongfully solicit
> Christopher Carter to secure the services of a
> contract killer to murder Staff Sergeant Jeremy Green.
>
> . . . .
>
> SECOND ADDITIONAL CHARGE, Violation of the UCMJ,
> Article 80
>
> Specification:  In that [Appellant] did, at or near
> Perry, Georgia, between on or about 15 September 2004
> and on or about 13 October 2003, attempt to conspire
> with Christopher Carter and an undercover law
> enforcement officer known to the accused as "Mike
> Williams" to commit an offense under the Uniform Code
> of Military Justice, to wit: the murder of Staff
> Sergeant Jeremy Green and in order to effect the
> object of the conspiracy the said Staff Sergeant
> Matthew W. Gladue did give a written contract to
> Christopher Carter promising the payment of money,

offense from solicitation because conspiracy requires additional proof "[t]hat the accused entered into an agreement with one or more persons to commit an offense" and "the accused or at least one of the co-conspirators performed an overt act for the purpose of bringing about the object of the conspiracy."  MCM pt. IV, para. 5.b.  See United States v. Carter, 30 M.J. 179, 180-81 (C.M.A. 1990) (concluding that charging conspiracy and solicitation was not multiplicious because the offenses have different elements).

Second, there was no unreasonable multiplication of charges.  Appellant did not object to the multiple charges and their specifications, and the specifications at issue address distinct criminal acts, do not misrepresent or exaggerate Appellant's criminality, did not unreasonably increase Appellant's punitive exposure, and are not the result of prosecutorial overreaching.  See Quiroz, 55 M.J. at 338 (relying on a list of factors to determine the unreasonable multiplication of charges).  In that context, it is firm, but not unreasonable, to charge each independent aspect of the conduct.

---

request to be introduced to "Mike Williams," direct Jessica Gladue to meet with Christopher Carter and "Mike Williams," and direct Jessica Gladue to pay Christopher Carter and "Mike Williams" money.