BAKER, Judge,
with whom EFFRON, Chief Judge,
joins (concurring in the result):
I agree with the general proposition that an accused can waive waivable motions, which is a circular legal truism, of course. However, I would not find waiver, express or otherwise, in this case because the military judge catalogued the motions at issue and he did not include either multiplicity or unreasonable multiplication of charges among the motions waived.
As the majority notes, waiver, the “intentional relinquishment or abandonment of a known right,” differs from forfeiture, “the failure to make the timely assertion of a right.” United States v. Gladys, 67 M.J. at 313 (C.A.A.F.2009) (quoting United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quotation marks omitted)). Generally, waivers of fundamental constitutional rights, including protection from double jeopardy, must be “knowing, *315 intelligent, and voluntary.” Ricketts v. Adamson, 483 U.S. 1, 23, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (citing Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). See U.S. Const, amend. V (“No person shall ... be subject, for the same offence, to be twice put in jeopardy of life or limb.”). Here, the record reveals no indication that Appellant knowingly, voluntarily, and intelligently waived his double jeopardy claims. Although Appellant expressly waived all waivable motions, the military judge delimited that waiver by cataloguing the specific motions and issues waived. This catalogue did not include multiplicity or an unreasonable multiplication of charges:
MJ: When you elected to give up the right to litigate these motion [sic] and I am going to be discussing with your counsel shortly what these motions are, did your defense counsel explain this term of the pretrial agreement and the consequences to you?
ACC: Yes sir, they did.
MJ: Defense counsel, what do you believe to be the factual basis for any motions covered by the pretrial agreement? Per one of the 802 conferences that we held prior to this trial I was informed of two potential motions. One of which you had submitted, motion for change of venue. I was also advised of a motion to suppress evidence that would effect — •
CIV DC: Those items which were found in the jail.
MJ: Please explain to me or educate me if you would on what you believe is the factual basis of any motions covered by this term of the pretrial agreement?
CIV DC: Outside of the ones that you just described which [sic] will be the motion for continuance—
CIV DC: The only other one that we can describe, which was somewhat eluded [sic] to by the prosecution, would be the entrapment defense. Of course as we know that can either be raised by a motion or upon the trial of the ease, whatever the evidence would be in that particular matter. We would waive that particular motion as well.
MJ: SSgt Gladue, the motion for the change of venue was made and a possible ruling could have been that your trial would have been moved to another location other than being held [sic] at or near Robins AFB. It wouldn’t necessarily effect [sic] any of the charges against you, just the location of your trial. Do you understand that?
ACC: Yes, sir.
MJ: The entrapment issue and the motion to suppress, if they were granted, that could result in — well, with regard to the suppression motion, the inability of the government to use that evidence to prove your offense which could result in a dismissal of those effective charges. Similarly the entrapment offense, if the government was unable to prove beyond a reasonable doubt that you were not entrapped, that similarly could result with respect of a finding of not guilty. Possibly a motion for finding him not guilty could be approved by the court with regard to some or all of the additional charges or second additional charges.
MJ: SSgt Gladue, do you understand that if these motions were made and granted by me that there is a possibility that the relief that I’ve discussed, specifically dismissal of some or all of those effected [sic] charges could result?
ACC: Yes, sir.
MJ: I said possibility because at this point in time no one knows for certain whether or not it would have that effect. Have you discussed those motions with your defense counsel?
ACC: Yes sir, I have.
MJ: Knowing what your defense counsel and I have told you, do you want to give up making those motions in order to get the benefit of your pretrial agreement?
ACC: Yes sir, I do.
The accused, especially in a plea context, looks to the military judge to explain the law *316 and to ensure he understands the terras of his pretrial agreement, as well as the consequences and meaning of his plea. The military judge did so in this case. Nonetheless, the majority considers the military judge’s explanation irrelevant to Appellant’s understanding of his plea and its terms. I do not see how we can determine Appellant’s plea was knowing and voluntary if we do not assess it in the context in which it was explained on the record to Appellant. See United States v. Smith, 56 M.J. 271, 272-73 (C.A.A.F.2002) (“To ensure that the record reflects the accused understands the pretrial agreement and that both the Government and the accused agree to its terms, the military judge must ascertain the understanding of each party during the inquiry into the providence of the plea.”).
Further, an accused cannot silently waive appellate review of plain error. See United States v. Branham, 97 F.3d 835, 842 (6th Cir.1996) (reviewing for plain error because failure to take affirmative steps to waive double jeopardy claims constituted forfeiture rather than waiver); United States v. Lloyd, 46 M.J. 19, 22 (C.A.A.F.1997) (“[I]n the absence of an express waiver or consent, we have not abandoned the doctrine of plain error with respect to multiplicious offenses.”). Waiver of waivable motions should be done on the record and expressly. Otherwise, the military judge and appellate courts will not be in a position to assess whether the waiver is knowing and voluntary.
That being said, I concur in the result because, waiver or not, there is no plain error in this case. There is no error because the charges were not facially duplicative and did not represent an unreasonable multiplication of charges. See United States v. Roderick, 62 M.J. 425, 433 (C.A.A.F.2006) (“Multiplicity and unreasonable multiplication of charges are two distinct concepts. While multiplicity is a constitutional doctrine, the prohibition against unreasonable multiplication of charges is designed to address prose-cutorial overreaching.”) (citing United States v. Quiroz, 55 M.J. 334, 337 (C.A.A.F.2001)).
First, the charges were not “facially dupli-cative, that is, factually the same.” United States v. Heryford, 52 M.J. 265, 266 (C.A.A.F.2000) (quotation marks omitted). To the contrary, the charges included distinct elements. See United States v. Hudson, 59 M.J. 357, 359 (C.A.A.F.2004) (“Under [the elements] test, the court considers ‘whether each provision requires proof of a fact which the other does not.’ ”) (quoting Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). Although Specifications 1 and 4 of Additional Charge II both address Appellant’s “solicitation of] an undercover law enforcement known to the accused as ‘Mike Williams’ to murder Staff Sergeant Jeremy Green,” they are distinct because Specification 1 includes the additional element that the solicitation impeded Appellant’s trial by court-martial.[1] Whereas solicitation requires “intent that the offense actually be committed,” Specification 1 requires additional proof that Appellant committed the offense of solicitation to “endeavor to impede a trial by court-martial.” Manual for Courts-Martial, United States pt. IV, para. 105.b(2) (2005 ed.) (MCM).
Further, the specification of the Second Additional Charge departs from Specification 3 of Additional Charge II because, even though it similarly addresses the role of Christopher Carter, it also addresses the payment of money, the involvement of Appellant’s wife, and the role of “Mike Williams” in *317 Appellant’s scheme.[2] Additionally, conspiracy is a distinct offense from solicitation because conspiracy requires additional proof “[t]hat the accused entered into an agreement with one or more persons to commit an offense” and “the accused or at least one of the co-conspirators performed an overt act for the purpose of bringing about the object of the conspiracy.” MCM pt. IV, para. 5.b. See United States v. Carter, 30 M.J. 179, 180-81 (C.M.A.1990) (concluding that charging conspiracy and solicitation was not multi-plicious because the offenses have different elements).
Second, there was no unreasonable multiplication of charges. Appellant did not object to the multiple charges and their specifications,. and the specifications at issue address distinct criminal acts, do not misrepresent or exaggerate Appellant’s criminality, did not unreasonably increase Appellant’s punitive exposure, and are not the result of prosecutorial overreaching. See Quiroz, 55 M.J. at 338 (relying on a list of factors to determine the unreasonable multiplication of charges). In that context, it is firm, but not unreasonable, to charge each independent aspect of the conduct.

. As stated in the charge sheet:
ADDITIONAL CHARGE II, Violation of the UCMJ, Article 134
Specification 1: In that [Appellant] did, at or near Perry, Georgia, between on or about 16 July 2004 and on or about 13 October 2004, wrongfully endeavor to impede a trial by court-martial in the case' of the United States vs. Staff Sergeant Matthew W. Gladue, by soliciting an undercover law enforcement officer known to the accused as "Mike Williams” to murder Staff Sergeant Jeremy Green, a witness in the case of United States vs. Staff Sergeant Matthew W. Gladue.
Specification 4: In that [Appellant] did, at or near Perry, Georgia, between on or about 16 July 2004 and on or about 13 October 2004, wrongfully solicit an undercover law enforcement officer known to the accused as "Mike Williams” to murder Staff Sergeant Jeremy Green.

. As stated in the charge sheet:
ADDITIONAL CHARGE II, Violation of the UCMJ, Article 134
Specification 3: In that [Appellant] did, at or near Perry, Georgia, between on or about 16 July 2004 and on or about 13 October 2004, wrongfully solicit Christopher Carter to secure the services of a contract killer to murder Staff Sergeant Jeremy Green.
SECOND ADDITIONAL CHARGE, Violation of the UCMJ, Article 80
Specification: In that [Appellant] did, at or near Perry, Georgia, between on or about 15 September 2004 and on or about 13 October 2003, attempt to conspire with Christopher Carter and an undercover law enforcement officer known to the accused as "Mike Williams" to commit an offense under the Uniform Code of Military Justice, to wit: the murder of Staff Sergeant Jeremy Green and in order to effect the object of the conspiracy the said Staff Sergeant Matthew W. Gladue did give a written contract to Christopher Carter promising the payment of money, request to be introduced to "Mike Williams,” direct Jessica Gladue to meet with Christopher Carter and "Mike Williams," and direct Jessica Gladue to pay Christopher Carter and "Mike Williams" money.